[L. A. No. 2951. Department Two.—March 2, 1912.]

In the Matter of the Estate of WILLIAM RICHARD BROOME, Deceased.

ESTATE OF DECEASED PERSONS — MANAGEMENT OF PROPERTY BY ADMINISTRATOR — PROFIT TO ESTATE — EXTRAORDINARY SERVICES —

EXTRA COMPENSATION.—It is no part of the duty or authority of an administrator with the will annexed to manage the property of the estate for the benefit of the estate or of the heirs. So far as they are concerned it is his duty simply to preserve the estate until distribution. If he undertakes the management of it and loss results, he is chargeable with that loss. If, upon the other hand, profit over and above normal results from his endeavors, he is entitled to an allowance from the estate by way of compensation for extraordinary services, under section 1618 of the Code of Civil Procedure, there being no provision in the will for the compensation of the executor or administrator.

ID.—APPEAL FROM ORDER MAKING ALLOWANCES TO ADMINISTRATOR—REVIEW OF FINDINGS AS TO EXTRAORDINARY SERVICES.—Where serious question arises, either over the character or value of the service to the estate, the appellate court will be reluctant to disturb the determination of the judge in probate with respect to the allowances made the administrator, or an allowance made where extraordinary services are found to have been rendered. Where, however, the court made a detailed finding of the nature and character of the services, and withheld extra compensation in the mistaken belief that, though they were of great value, and not such as the administrator was bound to render, they still did not come fairly within the category of extraordinary service, the appellate court will reverse the order refusing extra compensation, and direct the probate court to fix the amount thereof.

ID.—AGREEMENT FOR PAYMENT ON DISTRIBUTION ENFORCEABLE ON PARTIAL DISTRIBUTION.—An agreement between all of the heirs of an estate providing for the distribution to one of them of a sum of money in excess of his share "upon the distribution of the estate," may be enforced by him on a proceeding had for a partial distribution, if the estate has ample funds with which to pay such sum over and above all contingent or possible demands upon its moneys.

ID.—ACCOUNTING—EMPLOYMENT OF EXPERT ACCOUNTANT—NECESSITY FOR EMPLOYMENT.—It is the duty of an administrator with the will annexed to examine and if necessary oppose the accounts submitted for settlement by his predecessor in office. If technical or expert knowledge is necessary to make a proper examination, it is his duty to employ an expert accountant, and the expense of such employment is a proper charge against the estate.

ID.—APPEAL FROM ORDER OF PARTIAL DISTRIBUTION—JUDGMENT-ROLL—CERTIFICATION OF PAPERS—CLERK'S CERTIFICATE TO TRANSCRIPT.—An appeal by the administrator with the will annexed from portions of a decree of partial distribution is in effect an appeal from a judgment and may be taken on the judgment-roll alone, consisting of the petitions of the parties, the oppositions thereto, the findings thereon, and the decree based upon those findings. No bill of exceptions or other certification as provided by law and by rule XXIX

of the supreme court is necessary. The clerk's certificate to the correctness of the transcript is sufficient.

APPEAL from portions of a decree of the Superior Court of Santa Barbara County partially distributing the estate of a deceased person. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

Rufus L. Horton, for Respondents.

HENSHAW, J.—This is an appeal by the administrator with the will annexed of the estate of William Richard Broome, deceased, from certain portions of a decree of partial distribution of said estate made in the superior court of the county of Santa Barbara on the thirtieth day of January, 1911.

1. He appeals from that portion of the decree which denies his application for an allowance by way of compensation for extraordinary services rendered by him in the administration of the estate. The findings are voluminous. By them it is shown that William R. Broome died leaving Frances Broome, his surviving widow, and two sons and one daughter, Thornhill, administrator with the will annexed, Thornhill's brother Montague, and his sister Amy Lillian, who are respondents upon this appeal. As part of his estate, William R. Broome left a large ranch. The widow was appointed and qualified as executrix of the will on the twenty-fifth day of July, 1891, thereupon entered on the administration of the estate, and so continued as executrix (the quotations are from the findings) "until the second day of April, 1909, at which time she was removed from said office as executrix by this court acting on its own motion and not upon the petition or application of her son Thornhill, and solely because of her failure to render at any time since her appointment as such executrix any exhibit or account of her administration of said estate, although duly cited by this court so to do." Thereupon letters of administration with the will annexed were duly issued to Thornhill Broome, who ever since has been and now is the administrator with the will annexed of this estate.

"The said Broome Estate Ranch comprises about four

thousand acres of tillable farming land and about eighteen thousand acres of hilly and mountainous pasture land, and constitutes substantially all the income-producing property of said estate, other than the property of said estate still remaining in the hands of said Frances Broome; that for the more efficient discharge of his duties as administrator of said estate, and for the closer supervision of the agricultural operations carried on on said lands by tenants thereof under leases, covering the first farming season after his appointment as such administrator made by said Frances Broome as his predecessor in office, and by tenants under leases made by himself for the farming season last past, and for the better collection of the rentals due from said tenants, and for the more effective and profitable management of said property, said administrator with the will annexed, immediately after the issuance to him of letters of administration as aforesaid, took up his residence in an unoccupied building on said ranch, and repaired the boundary fences of said pasture lands which had become dilapidated, and inaugurated an improved system of management of the business of pasturing horses and cattle for hire on said ranch, and has from the time of his appointment as such administrator devoted his entire time to the care and management of the property of said estate and particularly of said Broome Estate Ranch and to the carrying on and management of the business of pasturing horses and cattle on said ranch; that such management of the lands of said estate and business thereon conducted by said administrator with the will annexed has been very profitable to said estate; and has resulted in the realizing of net annual returns from said Broome Estate Ranch since his appointment approximately four times the amount of annual net returns realized by his predecessor in the administration of said estate, for many years preceding the revocation of her letters as aforesaid, and contributed materially to the success of the negotiations for the aforesaid lease which were conducted by said administrator; that the services rendered by said administrator with the will annexed as aforesaid, though profitable to said estate and beyond the services which he was bound to render as such administrator, were not such as under the law could justify any allowance therefor as for extraordinary services claimed by him."

Appellant contends that by virtue of this finding he is entitled to extra conpensation (the will making no provision for the compensation of the executor or administrator), under section 1618 of the Code of Civil Procedure, which declares that "In all cases such further allowance may be made as the court may deem just and reasonable for any extraordinary service." It is to be noted that the court withheld this compensation not because the services set forth were not of great value to the estate, for it is found that they were, but under the conviction that they were not of the character described as extraordinary. But were not these services extraordinary? Respondent cites the definition of "extraordinary" given in 12 Am. and Eng. Ency. of Law, 2d ed., p. 609, as follows: "Extraordinary is defined to mean beyond, or out of the common order or rule; not usual, regular, or of a customary kind; not ordinary; remarkable; uncommon; rare." This definition may be accepted. Unquestionably the services performed by the executor and described by the court were of this unusual, uncommon, and rare kind, and the court itself finds that they were services which he was not bound to render as such administrator. Respondent further rests upon the general rule enunciated in 11 Am. and Eng. Ency. of Law, 2d ed. p. 1306, to the following effect: "It is well settled, as a general rule, that if an executor or administrator, in the course of his administration, renders to the estate services not ordinarily required or expected of him, he is not entitled to special compensation therefor, unless it is so provided by statute or by the will under which he acts; and this is true though he might properly have employed a third person at the expense of the estate to perform such services." But an examination will disclose that this general rule is invoked in those states where there are no statutes providing for the allowance of extra compensation for extraordinary services. As illustrative, may be cited *Gamble* v. *Gibson*, 59 Mo. 585, where it is declared that the acts for which the executor claimed extra compensation were "acts done by him in his official character." And the court says: "The executor charged his commission and got credit for it. . . . That is all the law will permit him to retain." But at variance with this general rule, the same learned work upon the next page points out the fact that the statutes of several states provide that "In ad-

dition to the allowance by way of commissions or otherwise
for the time, labor and risk incident to the management and
settlement of the estate, the court may allow every executor or
administrator a reasonable compensation for any extraordi-
nary services rendered by him." In *Brenham* v. *Storey,* 39
Cal. 179, it is declared that it is no part of the administrator's
duty or authority to manage the estate for the benefit of the
estate or of the heirs. So far as they are concerned it is his
duty simply to preserve the estate until distribution. It be-
ing no part of the executor or administrator's duty so to man-
age the estate, if he undertakes the management of it and
loss results, he is chargeable with that loss. If, upon the other
hand, profit over and above normal results from his endeav-
ors, it would indeed be a harsh rule which would deny him
extra compensation for a risk which he has voluntarily as-
sumed and for which, if losses resulted, he would have been
responsible. (See, also, *In re Rose,* 80 Cal. 166, [22 Pac. 86].)
In *Estate of Runyon,* 125 Cal. 195, [57 Pac. 783], extraordi-
nary compensation had been awarded for services quite sim-
ilar to those found in the case at bar. It was declared that the
services were not such as were incumbent upon the executor
in the common course of his duties. The allowance for extra
compensation was disallowed by this court upon the ground
that the will had fixed such compensation, and, accepting the
trust under the will, the executor was bound by its provis-
ion in this regard.

Where serious question arises, either over the character of
the service or the value of the service to the estate, this court,
under familiar principles, will be reluctant to disturb the de-
termination of the judge in probate. So, also, will it be re-
luctant to disturb an order fixing the amount of compensation
where extraordinary services are found to have been ren-
dered. Such, and such only, is the import of the language
in *Estate of Hedrick,* 127 Cal. 184, [59 Pac. 590]. In this
case, however, we have a detailed finding of the nature and
character of the services, and the court manifestly withheld
compensation in the belief that, though they were of great
value, and not such as the administrator was bound to render,
they still did not come fairly within the category of extraor-
dinary service. In this we think the court erred. The ad-
ministrator was clearly entitled to extra compensation, the

fixing of the amount of which, of course, primarily vests in the probate court.

2. The second branch of this appeal is from that portion of the decree denying the administrator's petition for distribution to him of the sum of three thousand dollars provided to be paid to him on distribution of the estate by an agreement between all the parties in interest, entered into upon April 21, 1910. Growing out of the mismanagement by the executrix of the estate and her failure for a period of many years to render any account of her trust, differences arose between the executrix and her son Thornhill, which involved the other members of the family. These differences were compounded and settled by an agreement between them. The estate was solvent, the decree establishing notice to creditors had been filed, and there were no creditors of the estate. The parties to the agreement were all of the parties in interest. The court finds "that for the purpose of terminating said controversy and putting an end to said litigation all parties interested in said estate and their respective attorneys entered into an agreement in writing dated the 21st day of April, 1910, and filed in this court the 22d day of April, 1910, wherein and whereby it was provided among other things that upon the distribution of said estate there should be distributed to said Thornhill Francis Broome the sum of three thousand dollars, and to said Montague W. Broome the sum of three thousand dollars, to be paid out of the funds of said estate; . . . That on the final distribution of said estate there will become payable to said Thornhill Francis Broome the sum of three thousand dollars and to said Montague W. Broome the sum of three thousand dollars out of the cash funds of said estate prior to distribution in accordance with the above mentioned compromise agreement of April 21, 1910." It will thus be seen that the court makes full recognition of appellant's right to the three thousand dollars, but defers payment of it until final distribution of the estate. Still in passing it may with propriety be pointed out that respondents' objections to the payment of the three thousand dollars, advanced in argument, are at total variance with the other findings in the case. Thus it is said that the agreement provided that the administrator would "proceed diligently to secure the final distribution of the said estate, to the end that the decree of final distribution

may be had on or before the 1st day of June, 1910," and it is argued that he has violated this agreement and delayed distribution by plunging the estate again into litigation with his mother, and by leasing the ranch for the period of five years, notwithstanding the fact that the agreement further provided that all litigation between the parties should be ended. But the court's findings in this regard are that while the agreement contemplated the delivery to the administrator by Frances Broome executrix of all of the property of the estate in her hands, "she has failed and refused to deliver to him as such administrator personal property of said estate remaining in her hands"; that an action by the administrator was thus necessitated and that action is now pending and "that a reasonable time has elasped in which to bring this estate to a close by way of final distribution, but that by reason of the failure and refusal of said Frances Broome to deliver to said administrator with the will annexed the personal property of said estate, the final distribution of said estate has been and is being delayed." The lease of the ranch could not have been made without the approval of the court and that approval would have been withheld unless it were for the clear advantage of the estate. The court in probate had before it the agreement of the parties, and it is idle to contend that the lease made under the circumstances here indicated was in violation of that agreement. As little weight attaches to the declaration by respondents that one of the chief inducements and reasons for entering into the agreement by the sister Amy Lillian was to prevent any further litigation and effect the immediate distribution of the estate, and that therefore she consented to the payment of three thousand dollars to her brothers in excess of any sum to be received by her, the fact being, as set forth in the agreement, that this extra allowance of three thousand dollars to the brothers was "intended to equalize the amounts so received by them with the amount heretofore received by Amy Lillian Broome out of said estate."

Coming thus to the ultimate question, it is further established by the findings that the estate has ample funds with which to pay this sum over and above all contingent or possible demands upon its moneys. Indeed, specific sums of moneys are by the court ordered to be set apart to await disposition upon final distribution. Amongst these sums are the

amount estimated in closing the estate by way of costs, commissions of executrix and administrator, and the six thousand dollars to be paid, three thousand dollars each to Thornhill and Montague, upon final distribution. The language of the agreement is that this three thousand dollars shall be distributed to Thornhill "upon the distribution of said estate." There is nothing in this language to limit the time to the final distribution, and there is nothing in the findings to justify the withholding of the money until the final distribution. The situation presented is that the funds are in the estate available for the purposes indicated, are by the order of the court segregated, with direction to the administrator to hold them for payment upon distribution, and no reason appears why they may not with propriety be paid under this decree of partial distribution.

3. The third matter presented upon this appeal is the dis-allowance by the court of an item of expense of $173.75, incurred by the administrator under the following circumstances. The executrix Frances Broome finally presented to the court her account. Upon this the court finds: "That the aforesaid account rendered by Frances Broome of her administration of said estate as executrix of said will was very voluminous, consisting of more than six thousand items, and was accompanied by several thousand papers as vouchers for said items of account, and embraced, besides transactions for account of said estate, numerous expenditures for the personal use of said Frances Broome and for the use of her family and the maintenance and education of her children, which expenditures were made indiscriminately out of moneys of said estate and out of the private funds of said Frances Broome; that for the purpose of analyzing said account and classifying the items thereof, and classifying and arranging the papers filed as vouchers in support of said items, for their more convenient consideration by the court, an expert accountant was employed on behalf of said administrator with the will annexed by his said attorneys at an expense of $173.75, which amount was paid to said accountant by said administrator and charged against said estate in his account; . . . that the preparation of his opposition to said account was one of the duties of said administrator with the will annexed and that the estate is not chargeable with the expense of the preparation of such opposition."

No question is thus presented but that the expert was honestly and properly employed by the administrator in the interest of the estate. The sole question is as to whether he may charge the estate with the cost of those services. In the *Estate of More*, 121 Cal. 609, [54 Pac. 97], where the court in probate disallowed the administrator payment for the services of a bookkeeper under his contention that the estate was of great value and that many important transactions required the service of an expert accountant, this court held that there were undoubtedly cases where such an employment would be proper, "but whether an administrator should be allowed for payments made for the services of a bookkeeper depends upon the circumstances of the estate, and is a matter properly left to the discretion of the probate judge." As the court here found, it was undoubtedly the duty of the administrator with the will annexed to prepare his opposition to the account of the executrix. But this is not wholly determinative of the question presented. He is expected to bring to the administration of his trust the capacities of the ordinary business man. If in this particular matter more than that knowledge and capacity were required properly to prepare and present the opposition, if technical or expert knowledge is a necessity, manifestly it is the administrator's duty to employ such technical and expert knowledge in the performance of his duty. This is the underlying question which the court's finding does not fully answer, and therefore the appeal as to this item is allowed, and upon a retrial of the matter before the court in probate that court, in the exercise of its discretion, will allow or disallow this item, as it shall determine the propriety or necessity of the employment by the administrator of this expert knowledge and skill, and the reasonableness of the charge therefore.

Respondents' preliminary objection to the consideration of this appeal, upon the ground that the transcript is not sufficient, and that the appeal is not taken in conformity with section 950 of the Code of Civil Procedure, or section 951 of the Code of Civil Procedure, is without merit. No bill of exceptions or other certification as provided by law and by rule XXIX [160 Cal. lvi, 119 Pac. xiv] of this court is necessary. (*Estate of Isaacs*, 30 Cal. 105; *Estate of Page*, 57 Cal. 238; *Miller* v. *Lux Estate*, 100 Cal. 609, [35 Pac. 345, 639]; *Estate*

*of Ryer,* 110 Cal. 556, [42 Pac. 1082].) Treating the decree from portions of which this appeal is taken as "in effect a judgment" (*Miller* v. *Lux Estate,* 100 Cal. 609, [35 Pac. 345, 639]), this appeal is taken upon the judgment-roll alone; that is to say, the petitions of the parties, the oppositions thereto, the findings of the court thereon, and the decree based upon those findings. No bill of exceptions was necessary and no certification other than that here given is required.

The judgment of this court therefore is:

1. That upon the findings here made the administrator is entitled to compensation for extraordinary services in such sum as the court in probate, in the exercise of its sound discretion, may fix.

2. That the administrator is entitled to present distribution to him under the decree of partial distribution of the sum of three thousand dollars as fixed by the convention of the parties.

3. That the court will make further determination and finding as to the item of $173.75 in conformity with the foregoing and in accordance with such determination will allow said item as a proper charge and disbursement by the administrator, or will withhold its approval of the same.

Lorigan, J., and Melvin, J., concurred.