MARTÍNEZ ET AL., PETITIONERS AND APPELLEES, v. MARTÍNEZ,
CONTESTANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in Adminis-
tration Proceedings.—Motion for Dismissal of the Appeal.

No. 2329.—Decided May 31, 1921.

APPEAL—TRANSCRIPT OF RECORD.—In preparing a transcript of the record for
    appeal the appellant can not select at his pleasure from the record in the
    court below the pleadings and documents, or separate portions thereof, which
    will support his contentions and exclude what may be unfavorable to his
    purpose, thus taking an undue advantage of his adversary and attempting
    to secure a reversal on a certificate showing the existence of only the docu-
    ments so chosen, or of a part of their contents. Hence, a transcript in
    which some portions of the judgment roll are literally transcribed and others
    are stated in substance does not comply with the requirements of section
    299 of the Code of Civil Procedure, and when the appellant, after having
    had time sufficient therefor, has not corrected the transcript, a motion by
    the appellee for dismissal of the appeal will be sustained.

The facts are stated in the opinion.

Mr. V. P. Martínez for the appellant.

Messrs. C. Franco Soto and J. D. Soto for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Víctor P. Martínez appealed from two orders, dated July
3 and 7, 1920, made in the course of a judicial administra-
tion, the first modifying and amending the original report
of a commissioner and directing the preparation and sub-
mission of a new report embodying the changes so indicated,
and the second approving and adopting such final report.

Appellees move to dismiss the appeal for want of a judg-
ment roll or other adequate basis for a decision upon the
merits.

The secretary of the district court, at the instance of
appellant and as data intended to constitute the record on
appeal, certifies in substance:

1. That on March 15, 1917, Cecilia Méndez, representing
her minor children, petitioners herein, filed the initial plead-
ing herein.

2. That on April 28, 1917, Víctor P. Martínez filed his

protest in writing in opposition to the petition for a judicial administrator.

3. That among the facts stated in the initial pleading it appears that "at his death ancestor Víctor Martínez y Martínez left property subject to partition among his heirs, which property, valued at $50,740.08, is in possession of his legitimate son Víctor Primo Martínez González, who has been in the enjoyment thereof since then and has not delivered any of such property or the fruits thereof to his brothers, the petitioners; that in a verified answer to the petition Martínez denies the said averment, and it appears from the affidavits of Emiliano Beauchamp Angleró and José Diepa Pérez, subscribed and sworn to before notary Alfredo Blasco Pagán on April 28, 1917, that after a liquidation of the estate of Víctor Martínez y Martínez wherein all the necessary details and data were considered, it was found that there was a balance against the estate of the spouses Víctor Martínez and Secundina González of $29,359.93, the assets (*sic*) thus exceeding the liabilities."

4. That by an order dated May 7, 1917, the judicial administration of the estate of Víctor Martínez y Martínez was decreed and Juan Martín Oronoz was named administrator.

5. That on May 11, 1917, the motion of the contestant, Víctor P. Martínez, appealing from the order of May 7, 1917, in which Oronoz was named judicial administrator and from another ruling of even date allowing the minors $100 a month as maintenance, was received by mail and filed.

6. That on May 26, 1917, Oronoz accepted his appointment and took his oath as judicial administrator.

7. That letters of administration were issued on May 29, 1917, and on May 29 of the same year the marshal was ordered to deliver possession of the property to the judicial administrator.

8. That on September 15, 1917, Juan M. Oronoz, as legal administrator of the estate of decedent Víctor Martínez y

Martínez, and Cecilia Méndez y Velázquez, as mother of Pedro Angel and Laura María Martínez with *patria potestas* thereover, appeared before Notary Enrique González Mena at Aguadilla and executed Deed No. 63, for the purpose, as alleged by Oronoz, of carrying out the provisions of sections 35–37 of the Special Legal Proceedings Act relative to the making of an inventory of the property of the deceased Víctor Martínez y Martínez, to which end he summoned Víctor Primo Martínez y González, lawful heir of said deceased, to be present at the office of the said notary on the said date at 9 a. m., but that said Martínez y González failed to appear, on the ground, among others, according to the statement of Oronoz himself, and a written communication to the latter, that the minors Pedro Angel and Laura María are not entitled to the inheritance; that he further summoned Cecilia Méndez y Velázquez as the mother and representative of said minors, but did not summon the creditors because they were unknown to him, reserving the right to do so by publication as prescribed by law; that at the said proceeding Cecilia Méndez proceeded to designate the following property as pertaining to the estate according to data that she claims positively to have taken from the records of the registry of property (describing same).

That Cecilia Méndez stated that, according to belief and information which she believes to be true, the described properties mentioned in the first, second, fifth, sixth and seventh clauses form part of the former Bejucos, or, as it is now called, the Villa Milagros property, which is a larger property and contains the following establishments, she being unable to state the difference in area or the value of such difference since all the values were based on the information taken from the registry of property, which she believes to conform to the facts. Said establishments are as follows (describing them). And Cecilia Méndez further stated that the details furnished as to the divers properties and credits mentioned

are based on the information and notes taken from the records of the registry of property and that she therefore believes them to be true and is unable to say whether there is any other property that may be regarded as pertaining to the estate of Víctor Martínez; that she makes the foregoing statements under oath so that they may have their legal effect.

That the notary read the deed, word for word, to the parties, who approved the same; that it was signed by Juan M. Oronoz, by witnesses Ramón Torres Alvarez and Juan Pellot and by Notary González Mena; that it was not signed by Cecilia Méndez because she stated she did not know how to sign, but the first-mentioned witness signed for her at her request.

9. That on February 4, 1918, and at the suggestion of administrator Oronoz the court named as partitioner Alfredo Blasco Pagán, there being nothing to show that this order was notified to the other parties.

10. That attached to the record is a certified copy of the judgment rendered by the Supreme Court on February 19, 1918, affirming the orders of May 7, 1917, in regard to the naming of a judicial administrator and the allowance of temporary maintenance to the minors Pedro Angel and Laura María.

11. That at page 52 of the third section of the record in the above-entitled case the following showing is made: (Follows an acceptance of the appointment as partitioner subscribed by Blasco Pagán).

12. That on May 27, 1918, the report of the partition of property, duly verified by the partitioner, attorney Alfredo Blasco Pagán, was filed in this secretary's office and contains the following data: (The data here extracted from the report referred to fill some ten pages of the record and include a more or less complete outline of the proposed distribution of the estate, including an inventory of the property subject to partition in alleged conformity to a ruling of the district

court dated May 2, 1918, pursuant to the decision of this court rendered on March 15, 1918).

13. That the writing in opposition to the approval of the proposed partition by contestant Víctor P. Martínez y González on June 12, 1919, was filed with this secretary on the 14th of the said month and year and contains, among other averments, the following: (The averments here referred to, together with argument and citations of authority in support thereof, cover several pages of the record).

14. That attached to the records of this case is a document which reads as follows: (Follows a decree of heirship in favor of Víctor Primo Martínez as the sole and universal heir of Víctor Martínez y Martínez and Secundina González y Gómez, dated September 27, 1912, duly certified by the secretary of the Mayagüez court and bearing *indicia* of having been recorded several times in the registry of property, apparently as title to various parcels of real estate).

15. That among the records of this case is found the following order: (The order here copied, dated July 3rd, 1920, recites the filing by partitioner Blasco Pagán of his report in regard to the partition of the estate; the filing of a motion in opposition thereto by Víctor P. Martínez; the setting of these motions for hearing on June 26, 1918; the impossibility of hearing the parties on that date by reason of certiorari proceedings instituted by Víctor P. Martínez; the return of the record to the court below on June 16, 1919, and a subsequent hearing of the motions above mentioned at which both the attorney for Cecilia Méndez and appellant herein appeared and presented, not only the arguments mentioned in their motions, but many others in support of their contentions. The order then proceeds to approve the proposed partition, not as presented by the partitioner, but with numerous modifications, including in the inventory certain property omitted by the partitioner and excluding numerous properties for reasons stated, and in view of the death of

the former partitioner and of the extensive character of these alterations, names a successor and directs the making of a new inventory, appraisement, liquidation, partition and allotment of the property in process of administration in accordance with the terms and provisions of the said ruling).

16. That on July 7, 1920, the following documents were attached to the record herein; namely, the inventory, appraisement, liquidation, partition and award of the property remaining at the death of Víctor Martínez y Martínez, as made by Arturo Reichard pursuant to the order of this district court of July 3, 1920, which has been copied into the fifteenth paragraph of this certificate.

17. Although there is no order or process showing the titles in favor of Víctor Martínez y Martínez that have been delivered to Blasco and Reichard in their character of partitioners under appointment by this court, it nevertheless appears that the records herein comprise a certificate of the Registrar of Property of Mayagüez referring to two properties, one containing 95.135 and another 20 *cuerdas,* both being located in the ward of Purísima Concepción of Las Marías, said properties having been acquired by the decedent, Víctor Martínez y Martínez, and recorded in the name of Víctor Primo Martínez y González as the intestate heir of the first-named, and that the record also contains a certificate of a declaration of heirship copied literally into paragraph 14 of this certification, which declaration is recorded in favor of Víctor Primo Martínez y González as the intestate heir of Víctor Martínez y Martínez as to a mortgage credit of $27,813.08; as to a property of 33 *cuerdas* in Guatemala of San Sebastián; as to another property of 40.51 *cuerdas* in the same ward and district; as to another property of 51.70 *cuerdas* in the ward of Hato-Arriba of said district; as to another property of 53.47 *cuerdas;* another of 16.22 *cuerdas* and still another of 182 *cuerdas* in the ward of Perchas of San Sebastián; and although there is no show-

ing that Martínez was notified of the appointment of Alfredo Blasco and later of Arturo Reichard as partitioner, it nevertheless appears that Martínez was summoned by partitioner Blasco to be present at the act of partition and did not appear, and it was further shown that his objection to the proposed partition by Blasco was heard and overruled when the partition was amended under order of the court by the new partitioner, Arturo Reichard, who was shown to have accepted his appointment as such on July 3, 1920.

18. That the following order appears in the record of this case: (Follows the order of July 7, 1920, approving the final report as made).

19. That on July 21, 1920, Víctor P. Martínez was notified of the orders of July 3 and 7, 1920.

20. That on July 31, 1920, a notice of appeal was filed by Víctor P. Martínez y González and appears among the records, said notice reading as follows: (Copying the notice of appeal).

21. That the said record contains a recital of the service of said notice of appeal couched in the following terms: (Follows a literal copy).

And in conclusion, the secretary further certified "that all the papers enumerated in this certificate, as well as the literal inserts relating to certain points in the record of the above-entitled case, coincide with what is shown by the said record; and that, in issuing said certificate, *reference to certain phases and a literal copy of others* were in deference to request so made by the contestant and appellant Víctor P. Martínez. And that all the points enumerated and the literal inserts go to form, as requested in the petition of said Martínez, *a record of the appeal in the present case* taken by said contestant from the orders of this district court of July 3rd and 7th, last, the first referring to amendments in the proposed partition and to the appointment of Arturo Reichard del Valle to make the final partition based on the plan

submitted by the deceased partitioner, Alfredo Blasco Pagán, as more fully set forth in said order, which has been literally transcribed elsewhere in this certificate, and the second referring to the final approval of the said partition.''

Upon this fragmentary abstract eighteen errors are assigned.

We shall refer to the question sought to be raised only in so far as necessary to illustrate the danger and difficulty involved in any attempt to determine such matters upon the data contained in the mutilated record now before us.

We quote the first, second and fourteenth assignments, together with enough of the argument under the last mentioned to indicate the source to which we are referred for the facts upon which it is based:

''A. That the lower court erred in issuing the letters of administration and delivering the property to administrator Oronoz on May 26 and May 29, 1917, on the ground that its jurisdiction was interrupted and because this contestant, on the said eleventh day of May, had filed his appeal taken from the order of the seventh of the same month ordering the administration and appointing Oronoz administrator.

''B. That the lower court. also erred in issuing its decree to the marshal on May 29, 1917, commanding him to deliver the alleged property of the decedent to administrator Oronoz, since his jurisdiction was in abeyance by virtue of the said appeals.

''N. That the lower court erred in ordering, of its own motion. and without giving this party a chance to be heard or to defend himself, that administrator Oronoz, who had been removed, be paid a certain percentage on the capital.

''That said error is proved like the foregoing and also for the following reasons.

''In civil proceedings action is taken at the instance of the interested party and never on the court's own motion, since this would be tantamount to making the court both judge and party, thereby violating section 23 of the Code of Civil Procedure.

''Moreover an administrator who, like Oronoz, has been removed for negligence and faulty administration of his office, is not entitled

to remuneration for duties he has failed to fulfil. In fact Oronoz and Cecilia Méndez have testified under oath in the lower court that he never supplied the minors with the funds ordered for their support, but distributed the same among Oronoz, Cecilia Méndez and attorney Franco Soto, and it was for this reason that Oronoz was relieved of his office of legal administrator and Cecilia Méndez of her *patria potestas* over said children and that a tutor was appointed to represent the latter. These facts are within the personal knowledge of the lower court and appeared in the record before it, as evidenced by the certificate made by stenographer Evaristo Estrille, and now forms part of the record on file in the office of the secretary of this honorable court attached to certiorari No. 228, *Martínez* v. *Crosas.*"

The record is silent as to any order of removal and, save for the admission contained in the fourth assignment, we would have been left to proceed upon the theory that the administrator originally named continued to act throughout the proceeding and is the administrator referred to in the order of July 3, 1920, as having rendered his final accounts, inventory and liquidation of the estate on June 16 of that year. But, if the original appointee were removed, the usual and ordinary course would have been a prompt final settlement of his accounts and delivery of possession to his successor, in which event the question raised in the first and second assignments would become academic and the error, if any, assuming that it was not cured by the other subsequent proceedings, *supra,* would be harmless. On the other hand, in considering the fourteenth assignment we can not be expected to grope through other records on file in this court in search of facts upon which the appellant relies to reverse the orders appealed from herein.

As to the alleged errors arising out of the approval of the final partition, it will suffice to say that we have not before us all the papers and documents on which the court below based its action. Even the petition mentioned in the first and third paragraphs of the clerk's certificate is want-

ing. As to the contents of instrument No. 63 referred to in the eighth paragraph of the abstract as purporting to be an inventory of the property belonging to the estate, we know nothing beyond the fact that Cecilia Méndez seems to have made certain statements before the notary. In the twelfth paragraph we are told that the report filed on May 27, 1918, by Blasco Pagán shows certain things. As to what it may disclose in regard to other matters which might have influenced the court below and justified its action, we are not informed. Similarly, in the thirteenth paragraph certain grounds of opposition are enumerated as having been presented to the court below, but the pleading containing these objections is not before us. Again, the trial judge in the order of July 3rd mentions a motion filed by the petitioner asking the approval of the report made by the partitioner and setting forth the grounds for the action so invoked; but this motion, upon which the trial judge acted in approving the report after making certain modifications therein, is not in the record nor elsewhere referred to therein. So, also, in the seventeenth paragraph not only are we denied the privilege of examining the certificate from the registry of property referred to therein, but it does not even appear that this certificate was ever submitted as evidence either before the partitioner or before the court for consideration in connection with the report of such commissioner. We are deprived of all opportunity to consider any reasons that may have been given by the district judge in ruling upon the objections raised by the appellant to the approval of the report made by partitioner, "which protest was overruled on final approval of the amended partition." The order of the 7th of July makes no mention of any motion, objection or protest made by appellant. If the secretary means to certify to an inference drawn by him from the order in question, then at least we might have been left free to reach our own conclusions; but if the record below contains any ex-

press ruling upon the question so presented to the court below, we are entitled to have that order before us.

To discuss and decide the numerous propositions submitted by the appellant, in the face of the motion to dismiss the appeal, would imply that the appellant in any case may select at will from the record below such pleadings and papers or isolated portions thereof as may support his contentions and omit or exclude whatever may be unfavorable to his point of view, thus obtaining an unfair advantage over his adversary and assuring himself of a reversal upon a certificate showing only the existence of such selected documents or such partial contents thereof.

Our Code of Civil Procedure, supplemented by the law of 1917 as amended in 1919, specifies in plain terms what the record on appeal shall contain. Section 303 allows us some latitude in determining whether an appeal shall be dismissed for want of the "requisite papers" or whether the appellant shall be given an opportunity to complete a defective record. But, subject to this qualification, the statutory provisions as to what shall constitute the judgment roll, including the statement or bill of exceptions or alternative transcript, if any, and as to how the same shall be prepared and certified, are mandatory and must be followed, in substance at least, in presenting questions for review by this court. The language employed, however liberally it may be construed, does not contemplate, authorize or permit the procedure adopted by the appellant herein.

As indicating the general principles involved, as well as the trend of thought along these lines in other jurisdictions, we may add, without comment, the following citations: 4 C. J., p. 59, sec. 1648, p. 98, sec. 1703, p. 131, sec. 1741, p. 140, sec. 1760, p. 416, secs. 2112 *et seq.*, p. 424, sec. 2130, p. 449, sec. 2166, p. 553, sec. 232, p. 731, sec. 2662, p. 735, sec. 2665, 736, sec. 2666, p. 751, sec. 2685, p. 285, sec. 2738; 2 Hayne New Trial and Appeal, p. 1276, sec. 230, p. 1385, note 36,

p. 475, sec. 265, p. 1520, sec. 273; *Featherman* v. *Granite County*, 28 Mont. 462; *Glavin* v. *Lane*, 29 Mont. 228; *Ruth Mining & Mill Co.* v. *Kenyon*, 30 Mont. 314; *In re Dougherty's Estate*, 34 Mont. 336; *Kimball* v. *Semple*, 31 Cal. 658; *Larkin* v. *Larkin*, 26 Cal. 323; *Miller* v. *Thomas*, 78 Cal. 509; *Shain* v. *Eikerenbotter*, 88 Cal. 13; *Thompkins* v. *Montgomery*, 116 Cal. 120; *Matter of Paige*, 12 Idaho, 410; *Estate of Broome*, 162 Cal. 258; *Going* v. *Guy*, 166 Cal. 279; *Erving* v. *Napa Valley Brewing Co.*, 18 Cal. App. 135.

During the six months or more that have elapsed since the filing of the motion now under consideration the appellant has manifested no disposition to amend the record, and the appeals must be

*Dismissed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.