**STATE of Oklahoma ex rel. CENTRAL STATE GRIFFIN MEMORIAL HOSPITAL, Plaintiff in Error,**

v.

**John M. REED, Administrator of the Estate of Roland Reed, Deceased, Defendant in Error.**

**No. 43274.**

Supreme Court of Oklahoma.

Feb. 1, 1972.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., Curtis P. Harris, Dist. Atty. of Oklahoma County, for plaintiff in error.

Eugene P. Ledbetter, Jr., Oklahoma City, for defendant in error.

HODGES, Justice.

This appeal poses two issues for our determination:

(1) May a husband's estate be liable for expenses of hospital care and treatment of his mentally ill wife who during his lifetime was admitted to a state institution as a patient.

(2) Does the notice to creditors as provided in 58 O.S.1961, 333 run against the State of Oklahoma?

Upon consideration of the following facts and law we answer both questions affirmatively.

Leah Hazel Reed was a resident patient in the Central State Griffin Memorial Hospital from August 1, 1953 until her death on May 7, 1965. Her husband, Roland Reed died intestate on December 29, 1964. Probate proceedings were commenced and on January 19, 1965, the administrator of his estate gave Notice to Creditors to present their claims within four months or be forever barred as provided in 58 O.S.1961, 333.

Approximately three years after the Notice to Creditors had expired, Central State Memorial Hospital filed a claim on the estate of Mr. Reed for hospital care and treatment of his wife as a resident patient for approximately twelve years in the amount of $10,432.20. The claim was disallowed, and this action was commenced. The trial court sustained a demurrer to plaintiff's petition and Central State Hospital appeals.

Under our Mental Health Law in Title 43A, Sections 111 through 118 provide for the expenses of care and treatment of patients and pupils at state institutions:

Section 111 provides:

"A patient or pupil at an institution within the department is liable for his care and treatment. This claim of the State for such care and treatment shall constitute a valid indebtedness against any such patient or pupil and his estate and shall not be barred by any statute of limitations. At the death of the patient or pupil this claim shall be allowed and paid as other lawful claims against the estate. Persons making application for admission of a pupil under Section 57 of this Act are also liable for the pupil's care and treatment, provided that said persons are legally obligated to support said pupil. Provided, further that no admission or detention of a patient in a state hospital or a pupil in school shall be limited or conditioned in any manner by the financial status or ability to pay of a patient or pupil, his estate, or any relative."

Section 115 provides in part:

"If a guardian has been appointed for the estate of a patient in an institution within this department, the court shall order the guardian to pay the amount of the State's claim for care and treatment as determined by Sections 112 and 113 of this Title. If no guardian has been appointed, the claim of the State against a patient for his care and treatment may be collected by suit or other proceedings against the patient brought in the name of the State by the County Attorney of the County from which said patient was sent or any county in which the patient may have property. The claim of the State against a husband, wife, the parents and the children of any patient for his care and treatment may be collected by suit or other proceedings in the name of the State against the husband, the wife, a parent, a child, or any two or more of them." * * *.

State Hospital contends that Section 115, supra, establishes liability of a husband or his estate for hospital care and treatment of his wife. The defendant administrator, on the other hand, contends that Section 115 does not impose liability upon the husband or the others therein enumerated, but only authorizes the collection of a claim by suit against the husband and others. Administrator argues that liability is only imposed upon the patient or his estate under Section 111, except for pupils admitted to a state institution under Section 57.

■ We find merit in the contentions of the administrator. Section 115, which is entitled "Payment by guardian—Collection by legal proceeding", does not create an indebtedness against a husband, wife, parents or children of a patient. It merely authorizes a suit by the State against those enumerated who are legally responsible for the patient under other provisions of our stat-

utes or are otherwise contractually obligated which will be hereinafter discussed. Section 111, which is entitled, "Liability of patient and estate for expense", specifically imposes a liability of indebtedness against a patient or his estate and those persons making application for admission of a pupil under Section 57. (This section authorizes the admission of mentally retarded persons, as distinguished from persons mentally ill). It would appear that if the legislature intended to make a husband, wife, parent or child liable for the expenses of a mentally ill person under our mental health code, they could have easily done so as was done in Section 111 imposing liability on a patient or his estate and for those persons responsible for admissions of pupils under Section 57.

■ Our attention is next directed to the duty or responsibility of a husband to furnish "necessaries" to his wife. Title 32 O.S. 10 provides:

"If the husband neglect to make adequate provision for the support of his wife, except in the cases mentioned in the next section, any other person may, in good faith, supply her with articles necessary for her support and recover the reasonable value thereof from the husband."

In Trahern v. Mulkey, 157 Okl. 297, 11 P.2d 942, we held that a husband, under this section and by virtue of the marriage relation, is required to furnish medical attention to his sick wife. In Schiefer v. Wilson, 171 Okl. 119, 42 P.2d 263, a wife was determined mentally ill and placed in a state hospital. Later she was removed from the state institution by the wife's sister and placed in a private sanatorium. There we upheld a jury verdict in favor of the sister against the wife's husband for expenses of hospital care and treatment. We said "necessaries" furnished to wife, for which a husband is liable, include generally those things suitable to husband's rank and condition in life which naturally and reasonably tend to relieve distress or

materially promote comfort of body and mind.

We find that under 32 O.S. 10, supra, a husband may be required under proper circumstances to pay for the expenses of hospital care and treatment of his wife who has been admitted as a patient at a state institution. It naturally follows that upon the death of the husband his estate is liable for these expenses incurred during his lifetime. Trahern v. Mulkey, supra.

Defendant administrator next contends the claim of the State Hospital is barred by Title 58 O.S.1961, 333, under our Probate Code. This statute requires all claims of creditors to be presented within four months from the date of publication of the Notice to Creditors, or be forever barred. State Hospital as mentioned before did not file its claim with the estate until approximately three years after Notice to Creditors was given and published.

The State invokes its sovereign immunity from application of a statute of limitations and insists that regardless of the passage of time involved in presenting the claim against the estate it must be recognized and paid.

The administrator recognizes that a statute of limitations cannot be imposed against a sovereign state, but argues there is a distinction between a statute of nonclaims as provided in 58 O.S. 333, supra and a statute of limitations. State Hospital asserts the same principle of sovereign immunity applies to a statute of nonclaims as to a statute of limitations.

Oklahoma has not considered this specific question before. In an extensive annotation in 34 A.L.R.2d 1003, the following summary of case law is given at page 1005:

"The problem involved herein appears to stem from a theory which is rooted deep in Anglo-American law, that time does not run against the king, as illustrated by the Latin maxim, "nullum tempus occurrit regi," or against the state, "rei-publicae." This approach is generally followed in regard to ordinary statutes

of limitation, unless the government has consented to be bound thereby. However, statutes of nonclaim are usually felt to be somewhat distinguished from ordinary statutes of limitation, and therefore the question arises whether a claim by the government or a sub-division thereof is governed by such statutes.

There is no doubt that claims of the United States government are not within nonclaim statutes, this question having been settled by the Supreme Court of the United States.

However, the question is not as well settled in regard to claims by the states or subdivisions thereof, although there would seem to be a slight preponderance of authority in favor of the view that such claims are within the operation of the nonclaim statutes, and therefore barred if not presented within the time limited therein.

Those cases in which the state has been held exempt from the operation of the statute seem to involve mainly either tax claims, or claims arising under a nonclaim statute which is limited in its scope to contract claims, the latter situation being treated very briefly because of its collateral relation to the problem under discussion."

 In some jurisdictions which hold the statute applies to the State, their reasoning is based on the premise that a statute of nonclaims operates to destroy the debt or claim as distinguished from a statute of limitations which is a theory of withholding the remedy and not a destruction of the claim or debt. Reith v. County of Mountrail, N.D., 104 N.W.2d 667 (1960); In re Ashing's Estate, 250 Iowa 259, 93 N.W.2d 587 (1958). Others proceed on the theory that the purpose of the nonclaim statute is to facilitate the orderly administration of estates and to permit them to be settled without delay and the statute therefore must apply to all alike. State v. Crocker's Estate, 38 Ala.App. 306,

83 So.2d 261 (1955); State ex rel. Slinkard v. Edwards, 11 Ind.App. 226, 38 N.E. 544. We find merit in both theories.

The purpose of the nonclaim statute is to facilitate the handling and closing of estates. The legislature has considered the importance of this question in its amendment of the statute reducing the period of time within which the claim may be filed from four months to two months. Clearly this is an expression of the legislative concern for the expediting and disposing of administration of estates without delay.

Justice is not served where the belated claims of a State are exempt from application of the nonclaim statute. If allowed all administrations of estates would be suspect. The parties involved and the public has a right to rely on a court's order and final decree of settling and closing an estate.

State Hospital further contends that 58 O.S. 331, does not apply to the State because the statute uses the terminology, "all persons having claims . . ." without specifically mentioning the State. They cite Morris v. State ex rel. Walcott, 88 Okl. 189, 212 P. 588, for the general rule that a State is not bound by the provisions of a general statute, where its effect would be to restrict the rights of the State, to effect its interest or to impose liability on it unless it is named expressly or by necessary implication. The Morris case recognizes, however, that a State may be bound even though not specifically named where the intent of the legislature clearly appears or is included by necessary implication. In considering the purpose of the statute which is to facilitate and expedite the administration of estates with finality as opposed to any loss of revenue to the State we find the legislature intended to make no exceptions to the requirements of the statute. Such a construction of the statute places no hardship on the State while a contrary interpretation would defeat its purpose and intent. We find the

State does come within the purview of the statute by necessary implication.

Judgment affirmed.

All Justices concur.