In the Matter of the ESTATE of Julius Eugene CARLIN, Deceased (two cases).

Phyllis CARLIN, Appellant,

v.

Blanche BRENNAN, Executrix, Appellee.

Blanche BRENNAN, Executrix, Appellant,

v.

Phyllis CARLIN, Appellee.

Nos. 49925 and 49936.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 8, 1977.

Released for Publication by Order of Court of Appeals Dec. 8, 1977.

Robert P. Kelly, Bruce W. Gambill, Pawhuska, for Phyllis Carlin.

Carl Pinkerton, James C. Pinkerton, Robert D. Frank, Tulsa, for Blanche Brennan, executrix.

ROMANG, Judge:

This is a probate case. Blanche Brennan, Executrix of the Will of Julius Eugene Carlin, deceased, and Phyllis Carlin, surviving widow, have filed separate appeals from the Final Decree complaining of claims allowed and not allowed. By Order of the Supreme Court these separate appeals have been consolidated for appellate jurisdiction. These combined appeals present four different propositions of error, which we will consider in an order other than presented.

Julius Eugene Carlin died testate on September 26, 1972, as a resident of Tulsa County. His Will was admitted to probate in the District Court of Tulsa County on October 23, 1972. One of decedent's three sisters, Blanche Brennan, was appointed Executrix as directed by the Will. Notice to creditors was given. After time for presenting claims had expired, Phyllis Car-lin, who had once been married to the decedent but later divorced, filed a petition for a widow's allowance claiming that she was the common law wife of decedent at the time of his death. The Executrix denied the claim. After a four day trial and the taking of the case under advisement for one month, a decision was rendered finding that Phyllis Carlin was the common law wife of decedent at the time of his death, and was thus entitled to a widow's allowance, which the court set at $250.00 per month. That decision was appealed by the Executrix to the Supreme Court of Oklahoma, where it was docketed as Case No. 47,739. It was assigned to the Court of Appeals, Division I, where the decision of the trial court was affirmed in an opinion filed on December 23, 1975. A Petition for Certiorari was later denied by the Oklahoma Supreme Court.

This appeal of the Executrix relates to that part of the Final Decree which reads:

7. The cash on hand as shown by the Final Account of the Executrix should be adjusted as set forth hereafter. The following disbursements are not allowed because the Executrix did not present her claim for approval as provided by 58 O.S. 351, although the debts were justly due and paid in good faith.

| | |
|---|---|
| Repayment for telephone calls made by Gene Carlin | $ 661.31 |
| Repayment of loans made to Gene Carlin | 1,650.00 |
| Repayment of personal taxes advanced for Gene Carlin | 37.20 |
| Repayment of auto and truck insurance premiums loaned to Gene Carlin | 476.90 |
| Repayment of legal and bond expenses loaned to Gene Carlin | 450.00 |
| Total | $3,275.41 |

All of the above payments and the loan were made during the lifetime of the decedent. The repayment the Executrix made to herself, without filing a creditor's claim, was on May 17, 1976, which was long after the claims were barred by the statute of limitations. See 12 O.S.1971, § 95.

58 O.S.1971, § 340 provides:

No claim must be allowed by the executor . . ., or by the judge, which is barred by the statute of limitations.

58 O.S.1971, § 351 provides:

If the executor or administrator is a creditor of the decedent, his claim, duly authenticated by affidavits, must be presented for allowance or rejection to the judge of the county court, and its allowance by the judge is sufficient evidence of its correctness, and it must be paid as other claims, in due course of administration. If however, the judge rejects the claim, action thereon may be had against the estate by the claimant, and summons must be served upon the judge of the county court, who may appoint an attorney at the expense of the estate, to defend the action. If the claimant recover no judgment, he must pay all costs, including defendant's attorney's fee.

The Executrix contends that she has the discretionary authority to pay just debts out of the assets of the estate even when creditors' claims are not filed, and she cites 58 O.S.1971, § 335, which provides:

When it shall appear upon the settlement of the accounts of any executor or administrator, that debts against the deceased have been paid without the affidavit and allowance prescribed by the preceding section, and shall be proved by competent evidence to the satisfaction of the county court that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or set-offs, and that the estate is solvent, it shall be the duty of the said court to allow the said sums so paid in the settlement of said accounts.

§ 335, supra, applies to debts that are "justly due." A debt that is barred by the statute of limitations, is not a debt that is "justly due," and it cannot be allowed by either the executor or the judge under § 340, supra.

We now take up the propositions presented by the surviving widow. The first we will consider, reads:

The trial court erred in approving the payment of the Executrix to her sister of a $1,000.00 obligation from the estate without a creditor's claim being filed, paid after the said claim was barred by the statute of limitations, and which could not have been enforced during the lifetime of the decedent.

■ On May 17, 1976, the Executrix paid to her sister, Opal Loughney, the sum of $1,000.00 from the funds of the estate. No creditor's claim had been filed by the sister. The $1,000.00 was for rent money owing to Mrs. Loughney by the decedent, which he had collected on her behalf in 1969, but had never paid over to her. The same law applies here as was applicable to the claim of the Executrix. The claim was barred by the statute of limitations.

58 O.S.1971, § 333 provides:

If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice, it is barred forever, except as follows: (Exceptions not applicable here.)

See in this connection, *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed,* 493 P.2d 815 (Okl.1972).

We hold that the Executrix is liable for the $1,000.00 which she paid to Opal Loughney. Said sum shall be returned to the estate account for distribution.

The next proposition we will consider reads:

The Executrix was not entitled to payment of a fee for extraordinary services for her effort in contesting the claim of the surviving wife as an heir of the estate.

The Final Decree reads:

The Executrix is entitled to ordinary compensation in the sum of $2,204.46, and extraordinary compensation under the laws of the State of Oklahoma in the amount of $2,204.46.

In *Wise v. Cutchall,* 171 Okl. 60, 41 P.2d 864 (1935), the Oklahoma Supreme Court held:

While there is no rule of strict application as to what constitutes extraordinary services, in a general way it is services that are out of the common order or rule and consists of matters not usual, regular, or customary in the probate of an estate. *In re Broome's Estate,* 162 Cal. 258, 122 P. 470; Bancroft Probate Practice, § 419. No extra compensation is warranted by the performance of such duties as leasing property, collection of rentals and interest, location of assets, and selling personal property.

In *Reed v. Charles Broadway Rouse, Inc.,* 174 Okl. 522, 50 P.2d 1097 (1935), the court syllabus states:

Where the evidence shows that all the services rendered in behalf of an estate are such as are ordinarily rendered, the administrator is not entitled to compensation for extraordinary services.

And in the opinion, the court held:

The next contention is that the court erred in refusing extra compensation on account of alleged extraordinary services rendered.

There is no evidence of services rendered the estate, other than such as are ordinarily rendered. For such services the statute provides the amount of compensation. Preparing a stock of merchandise for sale, selling it under the order of court, are but the services ordinarily expected of an administrator. For this the statute provides compensation. He was allowed the full amount as for ordinary services, and of this he has no right to complain. He fell far short of a showing of extraordinary services.

■ Here the Executrix testified that she had some trouble with the personal property and had to go down to decedent's farm to see what was there; that she had to sell two trucks, propane truck, a tank, gates and saddle; that she had to investigate the creditors' claims that were filed with her; that she investigated bank accounts that were rumored to exist in Paris, Texas and Atoka, Oklahoma, and made trips to close out the bank accounts in Haskell, Muskogee and Boynton, and had accounts in Tulsa; that she had to check a Model A Truck she heard about, and found that it wasn't of any value; and that she gathered information for the decedent's tax returns.

We find that, except for contesting the claim of the widow, all of the services of the Executrix fall within the general requirements of collecting and preserving the assets of the estate. We further find that the allowance for extraordinary services is excessive, and that it should be reduced from $2,204.46 to $1,000.00, which is hereby ordered.

The fourth and final proposition reads: A personal representative of an estate, who is also an heir, is not entitled to have her expense for attorney fees and court costs incurred on her behalf as an heir, and which inures to her benefit solely as an heir paid by the estate.

■ The trial court allowed the Executrix an attorney fee of $14,960.00. The court did not itemize what part was for services in the unsuccessful contest against the claim of the widow, but the attorney for the Executrix itemized his services and fees, which shows $8,282.50 for services rendered in the investigation, trial and appeal of the claim of the widow. Also allowed to the Executrix was payment of appeal costs of $730.64.

In contesting the claim of the widow, the Executrix was acting in a dual capacity, namely, as Executrix of the Will and as an interested heir. If her contest had been successful, she would have received one-third of the net estate under the terms of the Will. Since she was not successful, and the widow elected to take against the Will, the Executrix received only one-sixth of the net estate as her share.

In *Barnes v. Logsdon,* 178 Okl. 645, 63 P.2d 964 (1936), relied upon by both sides, the syllabus states:

An administrator of the estate of a deceased person, particularly where the heirs at law are absent, is entitled to contest probate of a will later produced and offered by strangers to the estate

who would be sole beneficiaries under the will, and, upon the county court's denying his contest and admitting the will to probate, said administrator is a "party aggrieved" and "a person interested" within the meaning of sections 1398, 1399, and 1400, O.S.1931, governing such appeals.

And in the opinion the court held:

It is true that the heirs at law themselves had the right to contest the will, but we hold that the administrator also has the right under the facts of this particular case, if he exercises it in good faith.

\* \* \* \* \* \*

We have already held in *Bell v. Davis,* 43 Okl. 221, 142 P. 1011, Ann.Cas.1917C, 1075, that an executor or administrator with the will annexed is not only a proper party to such proceedings, but is a necessary party.

A case more directly in point is that of *In Re Lorch's Estate,* Sur., 33 N.Y.S.2d 157 (1941). There the testator made practically no provision for his wife, and she elected to take against the Will. The Executrix defended the estate against the widow's claim. The New York court held:

The executrix was bound to employ all fair means to sustain the will under which she had been granted letters testamentary. (Citations omitted.) It was also her duty to protect the assets of the estate committed to her charge and in the performance thereof she could resist or litigate claims which, in the exercise of good faith, she believed to be unfounded. Her good faith in instituting the proceeding and prosecuting an appeal from an unfavorable result has not been questioned. Satisfaction of the elective share not only disturbs the provisions of the will but also diverts the assets of the testator from the course therein directed. The duty of sustaining the provisions of the will was none the less obligatory because the executrix was a legatee and might profit, to some extent, by excluding the surviving spouse from sharing in the estate. (Citation omitted.) The con-

test was not one between the spouse and a sole legatee where it might be said that the legatee was protecting his own personal interests. . . . The action taken by her was for the purpose of sustaining the will as a whole and preventing a diversion of the assets. Considered in that light the reasonable expenses incurred by her in the prosecution of the proceeding was a proper expense necessarily incurred in the administration of the estate.

Here the trial court found:

The Executrix and her attorneys acted as representatives of the estate and of all beneficiaries of the estate of the decedent in resisting said claim and their compensation is a proper items of expense of administration of the estate of the decedent and should be allowed. . . .

The above finding is sustained by the record. The amount of the total attorney fee appears to be also sustained by the record. We affirm the allowance of the attorney fee of $14,960.00, and the allowance of appeal costs of $730.64.

We decree in this combined appeal that the parties shall pay their own attorney fee, and costs, and that the same shall not be charged against the estate.

AFFIRMED IN PART; REVERSED IN PART.

BOX, J., concurs.

REYNOLDS, P. J., not participating.