### ADAMS *et al.* v. COON *et al.*

No. 2512.   Opinion Filed January 7, 1913.

(129 Pac. 851.)

1.  **LIMITATION OF ACTIONS—Stolen Property—Absence of Concealment.** The statute of limitations, as to lost personal property, or personal property in the hands of a thief, begins to run from the time of the wrongful taking or possession, and not from the time when the owner first had knowledge thereof, provided there was no fraud or attempt at concealment; and if such fraud or concealment exists it must, in order to avail the owner, be the act of the thief or finder of the property.

2.  **LIMITATION OF ACTIONS—Statutes of Repose.** Statutes of limitation are statutes of repose, the object and purpose of which is to suppress and prevent fraudulent and stale claims from springing up at great distances of time and surprising parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure from the lapse of time or the defective memory or death or removal of witnesses.

3.  **TRIAL—Directing Verdict—Conflicting Evidence.** Where issues of fact are presented by the pleadings and supported by the evidence, and the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from facts proven, the case, under proper instructions, should be submitted to the jury; and it is reversible error in such case to sustain a motion to direct a verdict.

(Syllabus by Robertson, C.)

*Error from Atoka County Court;*
*J. H. Linebaugh, Judge.*

Action by Rhoda Coon and A. D. Coon against F. E. Adams and T. F. Horne. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

*Winfield S. Farmer,* for plaintiffs in error.

*D. H. Linebaugh,* for defendants in error.

Opinion by ROBERTSON, C.   This is an action in replevin for the possession of a horse.   The evidence shows that Mrs. Coon, one of the defendants in error, in 1901, was the owner of a young colt.   This colt, with other live stock belonging to her father's family, ran loose upon the prairie near their home, which was in the neighborhood of Lehigh.   In 1903 defendants in error moved to Roff, 50 or 60 miles away.   They claim the colt at that time had become lost or stolen, and could not be found, and that they offered a reward for the same, in the hope of recovering it.   It was also shown that Joe Marshall, the stepfather of Mrs. Coon, and with whom Mrs. Coon lived prior to her marriage, had a lot of live stock, including horses, running at large on the range at that time, and that the colt in question ran with his stock, and was branded in his brand by his son, who however, testified at the trial that he branded the animal at his sister's request, it being her property; the whole family owning live stock and using the brand in common.   Tom Brown testified: That he knew the animal.   That he owned it once, having obtained it from Joe Marshall, by trade, six or seven years before the trial.   He lived in the same neighborhood and kept the animal nearly two years, when he sold it to John Meadows, who also lived in the same neighborhood, and who also kept the animal for nearly two years, when he sold it to a Mr. Catz, who also owned it for two years, who kept the animal in a pasture near Lehigh a part of the time, and also drove it around over the country; his business being that of a peddler.   Catz sold the horse to Charley Kilgore, who, ten days prior to the commencement of this action, sold the same to plaintiffs in error.

The evidence shows, without dispute, that each of these gentlemen, who had owned the animal, held it in open, notorious, exclusive, and peaceable possession, and that their right to it was never questioned, and that the animal was never secreted nor run out of the country, but, on the contrary, was kept, prac-

tically all the time (six or eight years) in the very neighborhood in which it was foaled.

The defendants admit that they had not seen the animal for six or seven years; that it was but a colt when they moved away; that it was branded, when they left the neighborhood, ·in Joe Marshall's brand, but allege that said brand was in common use among all members of the family (Rhoda Coon being a step-daughter of Joe Marshall). After the testimony was all in, the defendants below moved the court to direct a verdict in their favor, for the reason that the cause of action was barred by the statute of limitations. This request was denied, and ·defendants excepted. Thereupon plaintiffs moved for a directed verdict in their behalf, which motion was, by the court, sustained, and to which defendants excepted, and bring this appeal to reverse the judgment entered on the verdict.

Two questions are raised in the assignment of error: First, the statute of limitations; and second, the court erred in direct-ing a verdict for plaintiffs, for that, the evidence on the ques-tion of ownership being conflicting, the question should have been submitted to the jury, instead of being decided by the court. In our opinion, both points are well taken. As a general proposition, the statute of limitations, as to replevin actions for the recovery of lost or stolen property, begins to run from the time of the wrongful taking or possession, and not from the time when plaintiff first had knowledge there-of, if there was no fraud or attempt at concealment; and if such fraud or concealment exists it must, in order to avail plaintiff, be the act of defendant himself. 34 Cyc. 1423.

It must be admitted that all the evidence in this case shows that the possession of all the various owners of the horse in question was open, peaceable, exclusive, and notorious. This is true even as to Joe Marshall, the stepfather of Rhoda Coon, one of the defendants in error, who had possession of the animal after defendants in error moved away, and whose stock brand the animal in question bore. There was no attempt on the part of any of the various vendors or vendees to conceal the animal, or to remove the same from the immediate neighborhood where

it was foaled; and the mere fact that defendants removed from the neighborhood six or seven years prior to the bringing of the action did.not suspend the bar of the statute. This principle of law is thoroughly discussed in an able opinion by Mr. Justice Clayton, in *Gatlin v. Vaut,* 6 Ind. T. 254, 91 S. W. 38, in which he says:

"If he had held the property openly and notoriously in the community where the larceny occurred, he could undoubtedly do so [plead the statute], not so much because he was entitled to the protection afforded by the statute, but because of the laches of the plaintiff. But where he conceals the property, and removes both it and his person from the jurisdiction of the court, and so long as such acts continue, as against him, the running of the statute is certainly suspended. * * * The statute says that if any person, by any improper act of his own, prevents the bringing of an action, the statute shall not operate until such act ceases; and where a person innocently obtains stolen property it will require some active act of concealment or fraud on his part to further suspend the statute. * * * We therefore hold that the statute of limitations, as to personal property in the hands of a thief, who has removed it from the vicinity of the owner or secreted it from him, does not begin to run until he returns the property to that vicinity, or openly and notoriously holds it, so that the owner may.have a reasonable opportunity of knowing its whereabouts and of asserting his title. And when he does this the statute begins to run, although the proof may show it to have been stolen property, not on the theory that the thief is to be proteced, but because of the laches of the owner in not asserting his title for so long a period as the statute gives him."

The above case, in principle, is decisive of the question under consideration. Here the colt, having been branded in Marshall's brand, ran free on the range with Marshall's stock. It is not denied but that Marshall traded the animal to Brown, or that Brown was in the peaceable, exclusive, and notorious possession of the same for nearly two years, and in the immediate neighborhood where the colt was foaled, or that he sold it to Meadows, who likewise held it for two years, and sold it again in the same neighborhood; this buying and selling continuing for a period of seven or eight years. No attempt was made on the part of any of the owners to conceal the animal, or to prevent

the owner 'from finding and recovering it. We do not know on what theory plaintiffs below followed the horse, whether as stolen or lost property; but in either event, under the facts of this case, the above law is applicable.

In *Dee v. Hyland*, 3 Utah, 308, 3 Pac. 388, it was held that the plaintiff's cause of action was barred, because the defendant, although having obtained possession of stolen property, had been in such possession openly and notoriously for more than three years. See, also, *Hicks v. Fluit*, 21 Ark. 463.

Statutes of limitation are statutes of repose, the object and purpose of which is to suppress and prevent fraudulent and stale claims from springing up at great distances of time and surprising parties, or their *representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure from the lapse of time or the defective memory or death or removal of witnesses. 25 Cyc. 985. The defense of the statute of limitations in this action in the court below is a shining example of the usefulness and wisdom of the rule above enunciated. Without such a law there would be injected into almost every transaction, such as is related in the history of this case, an element of uncertainty that would noticeably interfere with the stability of ordinary business affairs. To guard against this statutes of limitation have been called into existence, to the end that those who have a wrong will speedily pursue their remedy, and to prevent innocent parties from being called upon to defend against actions, the evidence to defeat which has been lost or forgotten.

We are also of opinion that the trial court erred in directing a verdict for plaintiffs, for that the evidence of ownership on which they relied in order to recover was not as plain or convincing or consistent as would justify the court in taking the issue from the jury. Ownership in this case was primarily one of fact. In replevin the plaintiff must recover on the strength of his own, and not on the weakness of defendant's, title. The evidence in this case, in some particulars was inconsistent, and in other ways of doubtful value. The credibility of the witnesses, and the effect to be given inconsistent testimony, are for the de-

termination of the jury. *Moore v. First Nat. Bank,* 30 Okla. 623, 121 Pac. 626:

"Where issues of fact are presented by the pleadings and supported by the evidence, and the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from facts proven, the case, under proper instructions, should be submitted to the jury; and it is reversible error in such case to sustain a motion to direct a verdict. *Brown & Bridgeman v. Western Casket Co.,* 30 Okla. 144, 120 Pac. 1001."

Such a case is the one under consideration. The question of ownership should have been submitted to the jury. It is not enough to say that the evidence on the subject preponderated in favor of the plaintiffs. The issue was primarily one for the jury to decide.

For the reasons hereinbefore given, the judgment of the county court of Atoka county should be reversed and the cause remanded, with instructions to enter judgment for defendants in accordance with the prayer of their answer.

By the Court: It is so ordered.