## Leonard J. Abbadessa v. Andrew Tegu et al

[154 A2d 483]

May Term, 1959.

Present: **Hulburd, C. J., Holden and Shangraw, JJ. and Divoll and Keyser, Supr. JJ.**

Opinion Filed September 1, 1959.

*Witters, Longmoore & Akley* and *F. Ray Keyser, Jr.* for the defendants.

*Richardson & Caldbeck* for the plaintiff.

**Hulburd, C. J.**  By V. S. 47, §8335, the fraudulent transfers or conveyances of a person seeking to avoid the debt or duty owing another are rendered null and void as to such other person.  In addition to that, the succeeding section, §8336, provides that the parties to such fraudulent conveyances shall forfeit the value of the land or property so conveyed, and the statute goes on to specify:  "Such forfeiture shall be re-

covered in an action of tort on this statute, half to go to the party aggrieved, and half to the county in which the offense is committed."

It is pursuant to the provision just quoted, which dates from 1787, that the plaintiff has brought this action. The defendants have interposed as a defense a plea of the statute of limitations. The matter came on for hearing in the court below as to the sufficiency of the plea. The validity of the plea depends entirely upon which of two different statutes of limitations is applicable. One is a two-year statute and the other a four-year statute. If the four-year statute applies, the plaintiff has brought his suit in time; if not, and the two-year provision is controlling, the plea is good and the plaintiff's action is barred. The trial court held that V. S. 47, §2498, the four-year statute, governed. The defendants come here with their exceptions to the ruling, having obtained permission to do so before final judgment.

The statute relied upon by the defendants reads as follows:

> "2497. **If State, county or town has penalty.** Actions founded upon a statute for a penalty or forfeiture given in whole or in part to the state, county or town shall be commenced within two years after the commission of the offense, and not after, unless otherwise provided."

The plaintiff contends that section 2498 governs. It reads as follows:

> "2498. **If party aggrieved has penalty.** Actions upon a statute for a penalty or forfeiture given in whole or in part to the party aggrieved shall be commenced within four years after the commission of the offense, and not after."

It is this latter section which the court below held to be applicable to this case.

At the outset, let it be observed that either statute, in the absence of the other, would fit the action brought. The trouble is we are confronted with both. Since this is so, we must make a choice and that choice must be dictated by the

intent of the Legislature in enacting the two statutes. What is there, then, which tends to indicate the Legislature's intent as to which provision should apply to an action of this particular sort? That it is an action of a particular sort is a fact without doubt. Actions such as the one we have here are spoken of as *qui tam* actions. The penalty being given in part to the prosecutor and the remainder to the sovereign or other public body, the plaintiff was, at common law, described as one *who* sues for the king *as well as* for himself.

■ There is much in all this which sounds quaint and of another age. Today we think of the fee system as something to be avoided in the administration of justice. To contemplate a situation in which the prosecutor got, not a fee, but a part of the penalty, is even more alien to our present way of thinking. Yet this was done and an example may be found in *Hubbell* v. *Gale*, 3 Vt 266, in which a common informer brought an action to recover usury received by the defendant from a third person under a statute then in force. As may be seen from the case cited, it was not the aggrieved person alone who, by statute, was frequently given the right to sue for the penalty. Often any one might sue, and the person so suing was designated a common informer. "A moiety of the forfeiture is given to him who shall first sue for the same" is the way a typical old statute read. This put a part of law enforcement in the hands of one's neighbors. Their interest was stimulated financially and not by purely civic motives alone. All this was quite proper and constitutional for it was held that a legislature might, by statute, in the absence of constitutional restrictions, give penalties to such persons and for such particular purposes as in its wisdom it may deem proper. *Marvin* v. *Trout*, 199 US 212, 26 S Ct 31, 50 L Ed 157.

Coming back to the case in hand, it would appear that the Legislature in the two statutes of limitation has said that if the penalty goes in whole or in part to the state, county or town, a two-year term applies and then in the next breath,—or in the same breath, it seems to have said if the penalty goes in whole or in part to an aggrieved person, a four-year term shall apply. Here the penalty goes as specified in both statutes.

Where does this leave us?

The defendants assert that the answer is to be found in the legislative history of the foregoing sections. In the light of what we have already said about *qui tam* actions generally, we turn to see what legislative history may be made to yield.

The first statute of limitations passed in Vermont is to be found on page 91 of the "Statutes of the State of Vermont, Passed by the Legislature in February and March 1787." We need not set this out since it was repealed in 1797 by section 12 of chapter LXVIII, Laws of Vermont. In the new enactment, the first section of the chapter provided as follows:

> "That all actions, suits, bills, or informations which shall hereafter be had, brought, sued or commenced, for any forfeiture upon any penal statute, made or to be made, the benefit whereof is or shall be, by the said statutes, limited in whole or in part, to the person or persons who shall inform and prosecute in that behalf, shall be had, brought, sued or commenced, by any person or persons who may lawfully pursue the same as aforesaid, within one year from the passing of this act, for past offences; and for all offences which shall hereafter be committed, within one year from the commission of the same, and not afterwards; and in default of such pursuit, then the same shall be had, brought or prosecuted by the state, at any time within two years, next after the passing of this act, for past offences, and for all offences which shall hereafter be committed, within two years from the commission of such offences, and not afterwards. And any indictment, complaint, or information for any offence against such statute as aforesaid, shall hereafter be found, made and prosecuted within two years limited as aforesaid, and not afterwards; any law, usage or custom to the contrary notwithstanding, excepting in the instances hereinafter provided."

Even at this early date, following the enactment of the foregoing, doubt as to the legislative intent arose. Realizing this, the Legislature in 1808 passed the following:

"An act, in explanation of an act entitled, an act for the limitation of suits on penal statutes, criminal prosecutions, and actions at law.

"Whereas doubts have arisen, whether upon a true construction of the first section of said act, it extends to any forfeiture upon any penal statute, where the act committed operates as a direct injury to the person or property of any person or persons; and the right of action or prosecution, is alone given to such person or persons injured or aggrieved, which doubts to remove.

"It is hereby enacted by the general assembly of the state of Vermont, That the first section of an act to which this act is an explanation, shall not be construed to extend to any case, where the remedy for the forfeiture or forfeitures on any penal statute, is or shall be given to the person or persons injured or aggrieved, or to him, her or them, and the state, county or town treasurer, any law or usage to the contrary notwithstanding." Acts and Laws of 1808, Chapter 91. Passed November 10th 1808.

It is unfortunate that a construing statute should need construction. Clarification doesn't come easily whether the attempt is made by the Legislature or by the rest of us. By the explanatory act we think it is trying to make clear its intent that an aggrieved person was to stand better than a common informer. Common informers were to be cut off at the end of a year and not to be allowed to "rake up" old scores. But where common informers were not by statute given the right to sue and such right was restricted to aggrieved persons alone, then the latter were not to be subjected to the shorter term of limitation. All this is merely a preview of an intention which was to develop further. It took further shape when next the Legislature had occasion to deal with this subject. This we see in the revision of 1839 which put the statutes in a form approximating our present law as quoted earlier.

Sections 5 and 6 of Chapter 57 of Revised Statutes, 1839 reads as follows:

"If the penalty is given in whole or in part to the state, or to any county or town, or to the treasury thereof, a suit therefor may be commenced by or in behalf of the state,

county, town or treasury, at any time within two years after the offence was committed, and not afterwards.

"All actions, upon any statute, for any penalty or forfeiture given in whole or in part to the party aggrieved, shall be commenced within four years after the offence was committed, and not after."

Here we see again legislative insistence that the aggrieved party should have preferential treatment so far as the length of the statutory period is concerned. He is given four years instead of two in which to sue.

■■ We agree with the defendants when they argue: "These statutes, having been enacted at the same time and as a part of the same chapter, must be read together and harmonized if possible, and to the extent of any repugnancy between them the special statute must prevail." *Bayley* v. *Harvey*, 111 Vt 339, 342, 16 A2d 192." But when the defendants go on to urge—"It is apparent that the Legislature at that time intended that the state counties and towns be placed in a special class. Having done so, the special provisions as to state, counties and towns must prevail over the general as to the parties aggrieved"—when the defendants make this argument, we accept everything but their conclusion. We think that the Legislature intended that aggrieved persons were to constitute the special class and that state, counties and towns were not the special object of the legislative intent. The whole trend of legislative enactment, it seems to us, was to that effect. We think that the plaintiff may well ask, as he has, "To what action does section 2498 apply if not to the present case?"

The enactment of 1839 has come down to us pretty much in the form quoted above. Such changes in wording as have occurred, it seems to us strengthen the construction that we have placed upon it. The legislative intent seems confirmed by the addition of the words "unless otherwise provided" to V. S. 47, §2497 (the state-county-town section). These words were first appended to this section in connection with the 1917 revision. By the addition of this limitation, section 2497 is rendered subservient to all other provisions in the law which

may run counter to it. By its own terms, it must give way to any provision repugnant to it. Clearly section 2498 is such a statute. The importance of the proviso is more readily appreciated by considering its effect had the situation been reversed, that is, with the limitation attached to the other section. Inescapably a different intent would then have to be inferred. As it is, §2497 is further generalized by the presence of the words, "unless otherwise provided." Since the Legislature has otherwise provided, effect must be given accordingly.

Our conclusion is that as the statutes stand, the plaintiff, in the pending action, was entitled to the four-year period provided by V. S. 47, §2498 in which to bring suit, and the ruling of the trial court was without error.

*Affirmed and remanded.*