STATE of Oklahoma, ex rel. Lewis SCHONES, Jewel Schones, and Marie I. Kupka, Appellants,

v.

TOWN OF CANUTE, Norma Warnke, Ronald Warnke, Neil J. Barton, June Walters, Jerome Warnke, Melvin Hutson, Ron Hutson, Darrell Wilson, Christine Smith, Cecil Burks, Craig Mahl, J. Robert Fraser, Lorena Cooper, David Skaggs, J.B. Vantrees, Paul Little, Terry Jordan, and Wayne Walters, Appellees.

No. 74939.

Supreme Court of Oklahoma.

June 29, 1993.

Rehearing Denied Sept. 22, 1993.

Thomas Neil Lynn III, Steven W. Gingras, Oklahoma City, for appellants.

Ted N. Pool, Sherry Blankenship, Pool, Thompson, Coldiron, Blankenship & Vincent, Oklahoma City, for appellees.

HARGRAVE, Justice.

We granted certiorari to determine whether resident taxpayers' suit to recover the penalty provided in 62 O.S. § 372 is barred by the one-year statute of limitations of 12 O.S.1981 § 95(4).[1] The trial court dismissed the action, presumably finding that the statute of limitations barred suit. The Court of Appeals reversed, relying on *State ex rel. Board of County Commissioners v. Shelton*, 727 P.2d 103 (Okla.App.1986), holding that where suit is brought on behalf of the state to enforce a "public right," the statute of limitations will not bar the suit by the sovereign. Because we find that a suit

---

**1.** 12 O.S.1981 § 95(4) provides:
"Within one (1) year: An action for libel, slander, assault, battery, malicious prosecution, or false imprisonment; an action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation."

brought by the proper officers of the Town of Canute in this case would not be barred by the statute of limitations, we find that the taxpayers' suit was timely filed. The applicable statutes are 62 O.S.Supp.1982 § 372[2] and 62 O.S.1981 § 373.[3]

This case involves suit brought by plaintiffs, resident taxpayers of the Town of Canute, pursuant to 62 O.S. § 373, against numerous individual defendants, including the former mayor and clerk/treasurer, alleged to be members of the Board of Trustees of Canute during a period from 1979 to 1985. The Town of Canute was named a defendant, as required by the statute. Plaintiffs pled twelve "causes of action": (a) four violations of competitive bidding provisions of city ordinances, (b) seven instances of wrongful approval of purchase orders under void contracts in violation of 62 O.S. § 371, and (c) one claim for damages to the Town of Canute and its residents for a contract for removal of a water tank, contrary to Canute city ordinances, which allegedly damaged Canute in amount of two thousand dollars ($2,000.00) for the value of the tank, and three thousand dollars ($3,000.00) as damages caused by depriving the city of a backup water supply system. For the first eleven causes of action plaintiffs sought recovery of the amounts paid. Plaintiffs then prayed for recovery of triple the amount wrongfully paid on each of the causes pursuant to § 372. Only three of the claims stated the date of the transaction and those dates were in 1979 and 1982.

The taxpayers, on February 10, 1989, made written demand upon the city officials to file suit. The city officials did not file suit and plaintiffs' suit was filed July 28, 1989. Defendants moved to dismiss on grounds the action was barred by the statute of limitations, and the trial court entered an order of dismissal. Suit was brought by the taxpayers within six months of written demand being made; the question is whether the cause already was time-barred when demand was made.

Two lines of authority create confusion. A line of early cases held (or assumed) that

**2.** 62 O.S.Supp.1982 § 372 provides:
"Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, township, city, town or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, township, city, town or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage in all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, township, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, township, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided."

**3.** 62 O.S.1981 § 373 provides:
"Upon the refusal, failure, or neglect of the proper officers of the state or of any county, township, city, town or school district, after written demand made upon them by ten resident taxpayers of the state or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county, township, city, town or school district, or for the penalty provides in the preceding section, any resident taxpayer of the state or such county, township, city, town, or school district affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the state, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half (½) the amount of money and one-half (½) the value of the property recovered in any action maintained at the expense of the resident taxpayer under this section, shall be paid to such resident taxpayer as a reward." footnote citation omitted

the statute of limitations would run against the state or political subdivision in § 372 and § 373 cases where suit was for recovery of the penalty. See, *State ex rel. Lockhart v. Board of Commissioners of Lincoln County,* 197 Okla. 605, 173 P.2d 725 (1946), *Cummings v. Board of Education,* 190 Okla. 533, 125 P.2d 989 (1942), *Battles v. Conner,* 182 Okla. 613, 79 P.2d 232 (1938), *State ex rel. Estill v. Board of Commissioners of Pontotoc County,* 119 Okla. 215, 249 P. 394 (1926), *State ex rel. Gooch v. Drumright,* 88 Okla. 244, 212 P. 991 (1923), *State ex rel. Schilling v. Oklahoma City,* 67 Okla. 18, 168 P. 227 (1917), *Territory ex rel. Johnston v. Woolsey,* 35 Okla. 545, 130 P. 934 (1913). In those cases, apparently no argument was raised that the statute of limitations would not run against the sovereign or that the suit was for vindication of a "public right."

Another line of cases, which did not involve suit for recovery of a penalty, held that the statute of limitations would not bar a suit by the sovereign or political subdivision suing in their sovereign capacity for vindication of public rights. See, *Foote v. Town of Watonga,* 37 Okla. 43, 130 P. 597 (1913), *State ex rel. Land Commissioners v. Hall,* 191 Okla. 257, 128 P.2d 838 (1942), *Wooten v. State ex rel. Commissioners of the Land Office,* 191 Okla. 306, 129 P.2d 584 (1942), *Herndon v. Board of County Commissioners of Pontotoc County,* 158 Okla. 14, 11 P.2d 939 (1932), *Board of County Commissioners v. Good Township,* 188 Okla. 151, 107 P.2d 805 (1940), *State ex rel. Cartwright v. Tidmore,* 674 P.2d 14 (Okla.1983). The rationale behind these cases is that the public interest shall not be prejudiced by the negligence of the public officers to whose care those rights may be consigned.

Even those cases holding that the statute of limitations would run against the cause of action for recovery of a penalty by the state or political subdivision were not consistent as to when the statute would run against the resident taxpayers. The difficulty was in determining *when* the taxpayers' cause of action accrued. Some cases

held that demand must be made within the limitations time and others held that the taxpayers' cause of action did not accrue until demand was made so that the statute did not begin to run against the taxpayers until demand was made. See, for example, *State ex rel. Lockhart v. Board of Co. Com'rs of Lincoln Co.,* 197 Okla. 605, 173 P.2d 725 (1946), *State ex rel. Estill v. Board of Commissioners of Pontotoc Co.,* 119 Okla. 215, 249 P. 394 (1926), *State ex rel. Gooch v. Drumright,* 212 P.2d 991 (Okla.1923), *State ex rel. Schilling v. Oklahoma City,* 67 Okla. 18, 168 P. 227 (1917). It appears that the question whether the statute of limitations would run against the sovereign or its subdivisions for recovery of the penalty under § 372 in vindication of public rights had not been specifically addressed.

Both issues were raised in *State ex rel. Board of County Commissioners v. Shelton,* 727 P.2d 103 (Okla.App.1986). The Court of Appeals held that the statute of limitations would not run against a political subdivision where the Board of County Commissioners sued to recover the § 372 penalty against former county commissioners. Some of the defendants there argued that § 372 is a penal statute and that cause of action was thus barred by 12 O.S. § 95(4), or in any event by the two-year statute of limitations of § 95(3) for fraud. The trial court granted a motion to dismiss and the Board appealed, alleging that it was suing in its sovereign capacity to enforce a public right and was "... immune to bar of statute of limitations or, alternately that no statute of limitations began to run until plaintiff knew or should have known and had evidence to prove elements of its cause of action." The Court of Appeals held that the county was immune from operation of the statute of limitations. We denied certiorari.

Recently, in *City of Oklahoma City v. HTB, Inc.,* 769 P.2d 131 (Okla.1988), we reaffirmed the rule that, where the State or political subdivision is acting in its sovereign capacity vindicating a "public right", the statute of limitations will not run against it. In *HTB, Inc.,* which was not a

suit for recovery of a penalty, we recognized that the maxim *nullum tempus occurrit regi* (time does not run against the King) applies to municipal corporations as trustees of the rights of the public.[4] We said, 769 P.2d at p. 134:

> "From these cases we distill the general rule that statutes of limitation shall not bar suit *by any governmental entity acting in its sovereign capacity to vindicate public rights* and that public policy requires that every reasonable presumption favors governmental immunity from such limitation. In applying this rule to [the case being considered] we must determine whether plaintiffs acted in a sovereign capacity and whether the rights at issue rise to the level of public rights."

Section 372 gives a right of recovery to the proper municipal officers of triple the value of property wrongfully conveyed or amounts wrongfully paid out as a penalty. Section 373 gives resident taxpayers, after demand, the right to bring any proper action that the proper officers might maintain, and the right is phrased in the alternative: to recover the money or property, *or* for the penalty provided in § 372. In the case at bar, the resident taxpayers, although seeking recovery of amounts wrongfully paid, seek triple the amounts so paid, and as such, their suit is for recovery of the penalty. Whichever route the taxpayer takes, taxpayer will receive one-half of his recovery as "reward" and other half will go to the state or subdivision. 62 O.S. § 373. The only time the subdivision will be made "whole" in a resident taxpayer suit, is when taxpayer recovers the penalty. *See, Territory ex rel. Johnston v. Woolsey*, 130 P. 934, 938 (Okla.1913).

The resident taxpayer statute, § 373, offers three choices for recovery: recovery of the property wrongfully transferred, recovery of the amounts wrongfully paid or recovery of the penalty, which is triple the value of the property or money wrongfully transferred. The ultimate right at issue in each situation is the vindication of the public's right against wrongful actions by its public officials.

We have broadly categorized "public rights." We have held that suits by the Commissioner of the Land Office to foreclose its mortgages involve public rights and the statute of limitations will not bar the suit. *Sears v. Fair*, 397 P.2d 134 (Okla. 1964), *State ex rel. Commissioners of Land Office v. Hall*, and *Wooten v. State ex rel. Commissioners of the Land Office*. See also *Herndon v. Board of County Commissioners of Pontotoc County, supra*, we said that the public's use of the courthouse and its adjoining street involved a public right and the statute of limitations would not bar the suit.

In *Board of County Commissioners v. Good Township, supra*, we held that public rights were involved where county sued to recover principal and interest due on bridge bonds purchased with county sinking funds.

The public interest is involved in assuring that the performance of public officials in carrying out their official duties is free from illegality, fraud or wrongful conduct. We note that § 372 also provides a cause of action against those who receive the benefit of the wrongful payment of money or transfer of property. Section 372 is a powerful weapon given to the proper officers of the state or any county, township, city, town or school board to enforce violations enumerated therein against the public weal. In the case at bar taxpayer plaintiffs allege violation of the city's competitive bidding ordinances and violation of 62 O.S. § 371 for money paid out under void contracts entered into by the former trustees. The action clearly is one to vindicate

---

4. Article 5, § 53 of the Constitution of the State of Oklahoma provides:

"... the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities or obligations of any corporation or individual, to this State, *or*

*any county or other municipal corporation thereof,*"

including counties and municipal corporations within the scope of the protection afforded to the State and recognizing the continuity of liabilities and obligations to the sovereign.

public rights in insuring that public funds are properly spent. We therefore find that had suit in the case at bar been brought by the proper city officers, the statute of limitations would not bar the suit because the proper officers of the Town of Canute would be acting in a sovereign capacity for vindication of public rights.

Having determined that the statute of limitations would not bar the right of action in the proper officers in this case to recover the § 372 penalty, we find that the resident taxpayers' action in the case at bar was timely filed. Under § 373, the resident taxpayer has no right to file suit until demand has been made on the proper officers and the proper officers have failed to act. We hold that the taxpayers right of action does not accrue until demand has been made and the proper officers have failed to act. We said in *State ex rel. Trimble v. City of Moore*, 818 P.2d 889, 894 (Okla.1991), in discussing § 373, "The right of action accrues to the taxpayers when the city officers fail to act."

In the case at bar, the taxpayers made their demand in February, 1989, and filed their suit in July, 1989. The demand was timely because the statute of limitations did not bar the right of action of the proper officers of the Town of Canute, and the resident taxpayers' suit was timely brought after demand was made.

THE OPINION OF THE COURT OF APPEALS IS VACATED, AND THE TRI-

AL COURT'S ORDER OF DISMISSAL IS REVERSED.

LAVENDER, V.C.J., and ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concurs in part; dissents in part.

HODGES, C.J., and SIMMS (joins OPALA, J., in part) and OPALA (by separate opinion), JJ., dissent.

OPALA, Justice, with whom SIMMS, J., joins insofar as this writing concludes that there is a statutory time bar for a *qui tam* action, dissenting.

In *Okl. City Municipal Improvement Authority v. H.T.B., Inc.*[1] [H.T.B.], the court reaffirmed its commitment to the aberrational notion that, unless expressly included, political subdivisions—much like the State itself[2]—stand exempt from the purview of statutes that limit the time to bring personal actions.[3] Today's pronouncement extends this doctrine a step further by holding that it also benefits those who bring a *qui tam*[4] claim on behalf of inferior bodies politic. I receded from the teachings of *H.T.B.* and today I must dissent from its progeny.

# I

## ANATOMY OF THE LITIGATION

A statutory *qui tam* action[5] is one brought against a public official to recover

1. 769 P.2d 131, 137 (1989).

2. Unless specifically included, *the State* is exempted from statutory limitations by the *nullum tempus* doctrine, which gives recognition to the anciently accepted legal verity that found expression in *nullum tempus occurrit regi* (time does not run against the Crown). *See State ex rel. Cent. State Griffin Mem. Hosp. v. Reed*, Okl., 493 P.2d 815, 817 (1972). For a fuller explanation, *see infra* part III.

3. At common law, *personal* actions were those for the recovery of movable property, damages, or other forms of redress, as opposed to *real* actions which were for the recovery of lands, tenements, hereditaments, or for the protection of real property interests. *Mathews v. Sniggs*, 75 Okl. 108, 182 P. 703, 708 (1919). *See infra* note 41.

The terms of 12 O.S.1981 § 2002 are:
"There shall be *one form of action to be known as 'civil action.'*" [Emphasis mine.] Even though the distinction between actions at law and suits in equity and all *forms* of legal actions and equitable suits have been abolished *for pleading purposes,* the principles of *legal and equitable rights and remedies remain in force*; the Pleading Code was not intended to alter *rights, duties, and liabilities. See* § 2002, *supra* and *Mathews, supra,* 182 P. at 706–707.

4. For a definition of *qui tam* actions, *see infra* part I.

5. 62 O.S.1981 §§ 372–373; *State ex rel. Trimble v. City of Moore*, Okl., 818 P.2d 889, 891 n. 1 (1991); *see Marvin v. Trout*, 199 U.S. 212, 225, 26 S.Ct. 31, 34–35, 50 L.Ed. 157, 162 (1905);

a penalty (treble damages) for the commission of injurious acts or for a failure to act in obedience to some duty.[6] The terms of 62 O.S.Supp.1982 § 372[7] & 62 O.S.1981 § 373,[8] the statutes the court applies to this case, govern a city official's exposure to *qui tam* liability. When the proper authorities fail to redress the alleged violations, *any of the ten resident taxpayers who had demanded that a claim be pressed against an official wrongdoer may bring suit for recovery of the penalty, one-half of which goes to qui tam plaintiffs—those who pursue the action.*

In February 1989 resident taxpayers demanded that Canute's authorities prosecute a claim for in-office malfeasance against

eighteen individuals, including the former mayor and clerk/treasurer, all alleged to have been members of the town's Board of Trustees *between 1979 and 1985.* When the authorities failed to act, this *qui tam action* followed in July, 1989 for recovery of misappropriated funds. As required by law, Canute was included as a defendant. Alleged are violations of the city's competitive bidding ordinances and payments of money under void contracts, *some of which transactions took place as many as ten years before the action's commencement; none occurred less than four years before plaintiffs brought this claim.* According to the defendants, this *qui tam* action *is barred by the one-year statute of limitations prescribed by 12 O.S.1981 § 95(4).*[9]

---

*Abbadessa v. Tegu,* 121 Vt. 215, 154 A.2d 483, 484 (1959); *Stevenson v. Stoufar,* 237 Iowa 513, 21 N.W.2d 287, 289 (1946); *see also* Black's Law Dictionary 1126 (5th ed. 1979); Webster's Third New International Dictionary 1867 (1961).

**6.** In *Marvin, supra* note 5, 199 U.S. at 225, 26 S.Ct. at 34–35, the Court observed:

"Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government. *The right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer."* [Emphasis mine.]

**7.** The pertinent terms of 62 O.S.Supp.1982 § 372 are:

"*Every officer ... of any ... city ... who shall* hereafter *order or direct the payment of any money* or transfer of any property belonging to ... such ... city ... *in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement* made or attempted to be made, for the state or any such ... city ..., by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, *shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the ... city ... affected, for triple*

the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the ... city ... or of *any resident taxpayer* thereof, as hereinafter provided." [Emphasis mine.]

**8.** The pertinent terms of 62 O.S.1981 § 373 are:

"Upon the refusal, failure, or neglect of the proper officers ... of any ... city, ... after *written demand made upon them* by ten resident taxpayers of ... such ... city ... to institute or diligently prosecute proper proceedings at law or in equity for the *recovery of any money or property belonging to the ... city ..., paid out* or transferred by any officer thereof in pursuance of any *unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made,* by any of its officers for the ... city ... or for the penalty provided in the preceding section, any resident taxpayer of ... such ... city ... affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the ... city ... might institute and maintain for the recovery of such property, or for said penalty; and *such municipality shall in such event be made defendant, and one-half [½] the amount of money and one-half [½] the value of the property recovered* in any action maintained at the expense of a resident taxpayer under this section, *shall be paid to such resident taxpayer as a reward."* [Emphasis mine.]

**9.** The pertinent terms of 12 O.S.1981 § 95(4) are:

"Within one (1) year: ... [a]n action upon a *statute for penalty* or forfeiture, except where the statute imposing it prescribes a different limitation." [Emphasis mine.]

*The court concludes today that the teachings of H.T.B., which give municipalities an immortal remedy for the prosecution of personal actions, apply with equal force to qui tam plaintiffs who sue on behalf of such inferior (non-sovereign) bodies politic.*

## II

### *EVERLASTING* CIVIL OR CRIMINAL REMEDIES ARE NEITHER MANDATED BY OUR FUNDAMENTAL LAW'S INTERDICTION AGAINST RELEASING PUBLIC DEBTS NOR COMPATIBLE WITH THE LEGISLATIVE LIMITATIONS AND ABATEMENT REGIME

Art. 5, § 53, Okl. Const.,[10] which provides that the Legislature shall have no power to *release anyone's indebtedness to the State,* to the county, or to *its municipali-*

ties, appears to raise *no* fundamental-law barrier to applying general statutory time bars to political subdivisions or even to the State itself. *That Constitutional provision was intended to stamp out rampant and pernicious practice by lawmakers of sponsoring bills to exonerate their political cronies of liability for a public debt. The target of § 53 is any special act that would extinguish one's liability for a public debt.*[11]

Extant jurisprudence treats legislative limitations which are uniform and general, as required by Art. 5, § 46, Okl. Const.,[12] *as outside § 53's interdiction. Love v. Silverthorn*[13] teaches that the Legislature may limit the time within which intangible property is subject to discovery for tax assessment.[14] In *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed*[15] we applied to the State the statutory time limit in 58 O.S.1981 § 333[16] for filing a creditor's claim against a decedent's estate. Our decisional law holds that the Attorney Gener-

**This subsection's** one-year bar was held applicable to *qui tam* actions in *Territory v. Woolsey,* 35 Okl. 545, 130 P. 934, 938 (1913); *State ex rel. Gooch v. Drumright,* 88 Okl. 244, 212 P. 991, 992 (1923); *State ex rel. Estill v. Board of Com'rs of Pontotoc County,* 119 Okl. 215, 249 P. 394, 395 (1926). Extant jurisprudence teaches that although a *qui tam* cause of action does not accrue until the § 373 demand has been made, demand must occur *within a reasonable time, which should be taken to mean that it must take place before the maximum statutory period has expired. Gooch, supra,* 212 P. at 992; *Estill, supra,* 249 P. at 395.

**10.** Art. 5, § 53, Okl. Const. The provisions of § 53 are:

Except as to tax and assessment charges against real property remaining delinquent and unpaid for a period of time as long or longer than that provided by law to authorize the taking title to real property by prescription, *the Legislature shall have no power to release or extinguish,* or to authorize the releasing or extinguishing, in whole or in part, *the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof.* [Emphasis mine.]

**11.** *See Covington Bridge v. Davidson,* 102 S.W. 339, 340 (Ky.1907) and *In re Stanford's Estate,* 126 Cal. 112, 58 P. 462, 464 (1899), *identified* in R.L. Williams, THE CONSTITUTION AND ENABLING ACT OF THE STATE OF OKLAHOMA ANNOTATED (1912), *as a material source for the Constitutional Convention's draft of Art. 5, § 53.*

**12.** The pertinent provisions of Art. 5, § 46, Okl. Const. are:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any *local or special law* ...
" * * *
"[f]or *limitation of civil or criminal actions....*" [Emphasis mine.]

**13.** 187 Okl. 114, 101 P.2d 254, 257 (1940).

**14.** *Liability* for taxes is fixed only where there has been an *assessment that has become final. Love, supra* note 13, 101 P.2d at 257.

**15.** *Griffin, supra* note 2 at 818.

**16.** The pertinent terms of 58 O.S.1981 § 333, the statute in effect when *Griffin, supra* note 2 was decided (since amended by Okl.Sess.Laws 1988, C. 228, § 8, eff. Nov. 1, 1988 and Okl.Sess.Laws 1991, C. 148, § 2, eff. Sept. 1, 1991), *were:*

"*If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice* [two months from the date of the first publication under § 332], *it is barred forever,* except as follows: If it be not then due, or if it be contingent, it may be presented within one (1) month after it becomes due or absolute; if it be made to appear by the affidavit of the claimant, to the satisfaction of the executor or administrator and the judge of the district court, that the claimant had no notice as provided in this article, by reason of being out of the state, it may be presented at any time before a decree of distribution is entered * * *."

al does not *release the State's liability* within the meaning of § 53 when he *compromises and settles* a lawsuit against the State.[17] The marketable title act's provisions, 16 O.S.1981 §§ 72 and 73,[18] are viewed as expressly *including* municipalities.[19] When one municipality sues another over a matter of purely fiscal accounting, the action is subject to statutory limitations.[20] The Legislature has accepted our teachings in *Charles Banfield Company v. State ex rel. Fallis*,[21] which authorize the dormancy statute's application against the State's judgments, by allowing them to survive two decennial compilations next succeeding the promulgation of *Banfield's* pronouncement.[22]

*In sum, Art. 5, § 53 is not a restraint on the Legislature's power to enact limitations by a general act which binds the State or any of its subdivisions, either explicitly or implicitly, nor is it a barrier to the court's adoption of my counsel that we reject today the American frontier's version of nullum tempus.*

All remedies,[23] criminal or civil [24] (including a statutory *qui tam* action),[25] must die

17. *State ex rel. Derryberry v. Kerr–McGee Corporation,* Okl., 516 P.2d 813, 818 (1973).

18. The pertinent terms of 16 O.S.1981 §§ 72 and 73 are:
   "[§ 72] Such marketable record title shall be subject to:
   * * * * * *
   (b) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of *thirty (30) years or more,* in accordance with Section 74 of this title."
   * * * * * *
   "[§ 73] *Subject to matters stated in [§ 72] hereof, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever,* the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. *All such interests, claims or charges,* however denominated, whether legal or equitable, present or future, whether such interests, claims or charges are asserted by a person sui juris or under a disability, whether such person is within or without the state, *whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void."* [Emphasis mine.]

19. A city's interest in land is extinguished if it has not been preserved by filing a notice within a thirty-year period. *Mobbs, infra* note 26 at 550–551.

20. *Brown v. Board of Education,* 148 Okl. 97, 298 P. 249, 252 (1931).

21. Okl., 525 P.2d 638, 640 (1974).

22. The pertinent terms of 12 O.S.1991 § 735 are:
   "If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the court clerk *within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state,* or

if five (5) years has intervened between the date that the last execution on such judgment was filed or the date that the last garnishment summons was issued ... *such judgment shall become unenforceable and of no effect,* and shall cease to operate as a lien on the real estate of the judgment debtor. Provided, that this section shall not apply to judgments *against* municipalities." [Emphasis mine.]

23. *For every remedy except murder the Legislature has placed a limit upon the time within which an action, civil or criminal, may be brought. See infra notes 24 & 30. Although murder never dies as a criminal remedy, it is abatable by the death of the slayer.* For the legislative abatement scheme *see infra* note 27. The terms of 22 O.S.1981 § 151 are:
   "There is *no* limitation of the time within which a prosecution for *murder* must be commenced. *It may be commenced at any time after the death of the person killed."* [Emphasis supplied.]

24. *See, e.g.,* the provisions of 12 O.S.1981 § 93, which prescribe time bars for actions to recover real property and those in § 95, which set out the limitations for other civil actions. Statutory time bars express public policy and have long been recognized as *fundamental* to a *well-ordered judicial system. Zuckerman v. Transamerica Ins. Co.,* 133 Ariz. 139, 650 P.2d 441, 445 (1982). Whether litigants be *natural* or *artificial persons,* resident or nonresidents, *their time to sue is governed by statutes of limitations. Wehrenberg v. New York N.H. & H.R. Co.,* 124 A.D. 205, 108 N.Y.S. 704, 705 (1908). The pertinent terms of § 93 are:
   "Actions for the *recovery of real property* ... can *only* be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and *at no other time thereafter....*" [Emphasis mine.]
   The pertinent terms of § 95 are:
   "*Civil actions other than for the recovery of real property* can *only* be brought within the following periods, after the cause of action shall have accrued, and *not afterwards....*" [Emphasis mine.]

25. Our *qui tam* remedy is purely statutory. *See* 62 O.S.Supp.1982 § 372 & 62 O.S.1981 § 373,

either by lapse of time [26] or by abatement.[27] Because time bars are derived from a constitutionally restricted exercise of legislative authority,[28] there is in this State *a strong policy against their private or judicial modification.*[29] *A remedy that never dies nor abates is an anomaly and a conceptual stranger to the body of our statutory law. Acting contrary to the spirit and letter of the expressed public* policy,[30] *the court today invests a city's resident taxpayers with a remedy both immortal (unlimited in time) and unabatable (unextinguishable by the death of the defendant-actor or any of his/her successors). The idea of an eternally viable statutory remedy is facially absurd.* There is absolutely no constitutional or historical basis *for invoking legislative silence*—failure explicitly to include munici-

---

*supra* notes 7 and 8. *Before today's pronouncement unveiled qui tam's everlasting life, this statutory action came to be viewed as subject to the time bar of 12 O.S.1981 § 95(4). See supra* note 9.

**26.** "Lapse of time, coupled with non-possession or inaction, may alter a man's legal position *vis-à-vis* his property, both corporeal and incorporeal, in several different ways. The law may (1) bar the owner from asserting his rights *by a droitural action and thus leave these rights suspended in a state of unenforceability;* (2) *extinguish his legal right as well as his remedy;* (3) transfer his rights to another who has exercised them by long-continued possession or use; and (4) impose a presumption that long-continued possession or use by another had its beginning in a lawful devolution of right. The legal concept embodied in the first example aims at destroying actionability only, while that in the second example also effects an extinguishment of rights. * * * " [Emphasis supplied.] Opala, Praescriptio Temporis and Its Relation to Prescriptive Easements in the Anglo-American Law, 7 Tulsa L.Rev. 107 (1971).

*Statutes of repose,* as distinguished from *statutes of limitation,* might be viewed as *extinguishing the inchoate right,* because they *prevent the claim (the right) from accruing in the first place. Reynolds v. Porter,* Okl., 760 P.2d 816, 819–820 (1988); *Smith v. Westinghouse Elec. Corp.,* Okl., 732 P.2d 466, 468–469 n. 11 (1987). *See also Mobbs v. City of Lehigh,* Okl., 655 P.2d 547, 550–551 (1982) and *Griffin, supra* note 2 at 818.

**27.** Under the legislative *abatement regime,* some causes of action *survive,* while others are *extinguished* by the death of either or both of the parties. *Compare* the terms of 12 O.S.1981 § 1051 with those of § 1052. The terms of § 1051 are:

"In addition to the causes of action which survive at common law, *causes of action* for mesne profits, or *for an injury to* the person, or to real or *personal estate,* or *for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of* the person entitled or liable to the same." [Emphasis mine.]

The terms of § 1052 are:

"No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander or malicious prosecution, which shall abate by the death of the defendant. An action for libel, slander or malicious prosecution shall not abate after a jury verdict or a decision by the court where the trial is by the court, unless a new trial is ordered." [Emphasis mine.]

**28.** Art. 5, § 46, Okl. Const.; *Reynolds, supra* note 26 at 819 n. 6; *see Lake v. Lietch,* Okl., 550 P.2d 935, 937 (1976); *Thompson, infra* note 31 98 U.S. at 489, 25 L.Ed. at 195. *The only limitation developed by the common law was the so-called "immemorial prescription."* It was not until the 17th Century that Parliament passed legislation establishing fixed time limits within which an action must be brought. *See* Opala, *supra* note 26 at 111–113, 124.

**29.** *Reynolds, supra* note 26 at 819 n. 6. Statutory limitations may be neither abridged nor waived by contract. Art. 23, § 9, Okl. Const.; *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 686 (1983). *Courts are powerless to craft them. Reynolds, supra* note 26 at 819 n. 6.

**30.** *Financial crimes against cities* must be prosecuted within seven years from the date of discovery. The pertinent terms of 22 O.S.1988 § 152A, the statute in effect when this action was brought, are:

"Prosecutions for the crimes of bribery, *embezzlement of public money,* bonds, securities, *assets or property of ... any ... municipality ...* or of any *misappropriation of public money,* bonds, securities, *assets or property of ... any ... municipality ...* falsification of public records of ... any ... municipality ... and conspiracy to defraud ... any ... municipality ... in any manner or for any purpose *shall be commenced within seven (7) years after the discovery of the crime....*" [Emphasis mine.]

For the statutory time bar viewed as applicable to *qui tam* actions *before* today's pronouncement, *see supra* note 9.

palities as a class—as evidence of an intent to exempt from the purview of limitations *any qui tam* plaintiff other than one suing to benefit the sovereign State.

## III

## NULLUM TEMPUS, WHICH IS NO MORE THAN AN AID TO STATUTORY CONSTRUCTION, SHOULD BE CONFINED SOLELY TO THE SOVEREIGN STATE'S CLAIMS

The court today uses an aid to statutory construction which is a "vestigial survival of the prerogative of the Crown"[31] to confer upon private *qui tam* plaintiffs an immortal remedy when they sue for the benefit of non-sovereign political subdivisions. In its pure form *nullum tempus* gives *only* the Sovereign a perpetual remedy for personal actions.[32] According to the weight of authority,[33] a *state* is not subject to statutory limitations when acting in its sovereign capacity unless it be expressly included by the terms of the applicable enactment; on the other hand, *time does generally run against inferior (non-sovereign) public bodies* unless they are either *explicitly* excluded from the statute or are acting for the protection of their interests in real property[34] held for the public's benefit.[35]

A perceived need for protecting the cities on our Western frontier in an era when inferior bodies politic had no attorneys and when slow travel made it difficult to meet statutory deadlines gave rise to an early American extension of nullum tempus by which inferior public bodies that lack the attributes of sovereignty became the doctrine's beneficiaries. Courts, anxious to protect frontier communities' growth and eager to surround them with safeguards consistent with the public interest of the day, acted in the firm belief

---

**31.** *Guaranty Trust Co. v. U.S.*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). The *common-law* rule, exempting *only* the sovereign, is explained in *United States v. Thompson*, 98 U.S. 486, 489, 25 L.Ed. 194, 195 (1879):

"The common law fixed no time as to the bringing of action. *Limitations derived their authority from statutes. The King was held never to be included, unless expressly named.* No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while *the sovereign* was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants...."

"When the colonies achieved their independence, each one took these prerogatives, which had belonged to the Crown; and *when the National Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created. * * * *"* [Emphasis mine.]

*See Anderson v. Ritterbusch*, 22 Okl. 761, 98 P. 1002, 1012 (1908); *White v. State*, 50 Okl. 97, 150 P. 716, 718 (1915).

**32.** The weight of authority treats the *United States* and the *respective states, not* municipalities or other inferior bodies politic, as the counterpart of the British Sovereign. *Waller, infra* note 39, 397 U.S. at 392; *Sims, infra* note 39, 377 U.S. at 575. *Cities* are *not endowed with privileges or immunities under the United States Constitution [Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933) ] *nor is their relationship to the state analogous to that of the U.S.*

government vis-a-vis the respective states. *Sims, infra* note 39, 377 U.S. at 575.

**33.** *See, e.g., Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 11, 10 S.Ct. 19, 22–23, 33 L.Ed. 231 (1889); *Boone County v. Burlington & Missouri River R. Co.*, 139 U.S. 684, 693, 11 S.Ct. 687, 690, 35 L.Ed. 319 (1891); *In re Frey's Estate*, 342 Pa. 351, 21 A.2d 23, 24 (1941); *Hart v. Sternberg*, 205 Ark. 929, 171 S.W.2d 475, 478 (1943).

**34.** *See infra* note 41.

**35.** *See* ANNOT.: STATUTE OF LIMITATIONS AS APPLICABLE TO ACTION BY MUNICIPALITY OR OTHER POLITICAL SUBDIVISION IN ABSENCE OF SPECIFIC PROVISION IN THAT REGARD, 113 A.L.R. 376 (1938). Although contrary jurisprudence may be found, the better rule, as expressed by a leading municipal-law textwriter is:

"*Actions by municipalities are generally not exempt from the operation of general statutes of limitation, and their suits are therefore barred if the statutory period has run. Some jurisdictions qualify the rule and hold that, in the absence of a specific provision, general statutes of limitations apply to and may bar actions by local government units involving 'proprietary' rights but do not apply to actions involving 'governmental' rights.*" [Citations omitted and emphasis mine.] Charles S. Rhyne, THE LAW OF LOCAL GOVERNMENT OPERATIONS § 33.7 at 1084 (1980). *See also* 17 McQuillin, MUNICIPAL CORPORATIONS § 49.06 at 197–198 (3rd ed.).

that they were facilitating economic development. *Their hopes now stand realized.* It is high time to change the course of deviant frontier jurisprudence and return our law to the pure form of *nullum tempus.*

The frontier version of *nullum · tempus* [36]—to which the court clings in today's opinion—encourages slothful, dilatory behavior by those who serve municipalities. Inferior (non-sovereign) public bodies are now as able to meet statutory deadlines as any private suitor, perhaps even *more* so; [37] even the smallest of communities keeps on retainer at least a part-time municipal counselor. *Cessante ratione legis, cessat lex ipsa* is an ancient maxim of the common law. It means that *when the reason which gave rise to a rule ceases to exist, the rule itself must go.* The notion that society must be protected from the inefficiencies of its public servants is a *relic* which should be cast upon the legal bone pile. [38]

*No* city (*nor resident taxpayer suing on its behalf*) can ever act in a "sovereign capacity"—*that status is reserved to the States and to the United States.* [39] *Today's pronouncement that gives qui tam plaintiffs an undying remedy confers by judicial fiat sovereignty status upon private individuals.* [40] *Just as I did in HTB, so today once again I would counsel the court that, absent contrary legislation, only the State, acting in its sovereign capacity, may invoke nullum tempus to claim an immortal remedy for all of its personal actions.* [41]

## IV

## PUBLIC POLICY MILITATES STRONGLY AGAINST ALLOWING THE PROSECUTION OF STALE CLAIMS

*The public policy that undergirds remedial time bars has not changed; prosecution of stale claims does not serve the public interest. These bars* ensure that a party has (a) notice of a claim within a definite period of time and (b) an adequate opportunity to prepare the case before evidence is lost and witnesses scatter or die. [42]

36. Some jurisdictions have expanded *nullum tempus* to include inferior bodies politic. *See,* e.g., *City of Shelbyville v. Shelbyville Restorium,* 96 Ill.2d 457, 71 Ill.Dec. 720, 721, 723, 451 N.E.2d 874, 875, 877 (1983); *Laramie County Sch. Dist. # 1 v. Muir,* 808 P.2d 797, 802 (Wyo. 1991).

37. "It is just as much for the public interest and tranquility that municipal corporations should be limited in the time of bringing suits as that individuals or private corporations should be." *Metropolitan, supra* note 33, 132 U.S. at 11, 10 S.Ct. at 23. *This principle applies with even greater force in the face of a suit lodged by individuals who stand to personally profit from any recovery in which the public body may also share.*

38. For jurisdictions which still adhere to the pure form of *nullum tempus, see* authorities cited in *HTB, supra* note 1 at 141 n. 26. *See* also *N.J. Educ. Facilities v. Gruzen,* 125 N.J. 66, 592 A.2d 559, 563–564 (1991). There the *nullum tempus* rule was *abandoned* for contract actions brought *not* just by *agencies* of the state, *but by the state itself.*

39. "*Political subdivisions [including cities] never were and never have been considered as sovereign entities.*" [Emphasis mine.] *Waller v. Florida,* 397 U.S. 387, 392, 90 S.Ct. 1184, 1187, 25 L.Ed.2d 435 (1970), quoting *Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12

L.Ed.2d 506 (1964). These bodies politic possess *none* of the attributes of true sovereignty; rather, they are simply agencies of the state which assist in carrying out governmental functions. *Metropolitan, supra* note 33, 132 U.S. at 7–13, 10 S.Ct. at 22–23.

40. *Governments may not delegate any sovereign power to private citizens. People v. Chicago,* 413 Ill. 315, 109 N.E.2d 201, 206 (1952). For an explanation that inferior public bodies are *not* sovereign entities, *see* also *supra* notes 32, 33, 39.

41. For the common-law distinction between personal and real actions, *see supra* note 3. Except as it is affected by the marketable title act (*see supra* note 18), I would leave undisturbed the rule that, absent contrary legislation, title to land held by a municipal corporation for the public's benefit cannot be acquired by adverse possession. *Town of Chouteau v. Blankenship,* 194 Okl. 401, 152 P.2d 379, 383 (1944); *Mobbs, supra* note 26 at 550–551. *See* the explanation in *H.T.B. supra* note 1 (Opala, J., dissenting) at 137 n. 1, 138–139, and 139 n. 14.

42. *Chandler v. Denton,* Okl., 741 P.2d 855, 863 (1987). *See C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty.,* Okl., 503 P.2d 554, 559 (1972), superseded by statute on other grounds in *Ross v. Kelsey Hayes, Inc.,* Okl., 825 P.2d 1273, 1276–1277 (1991); *Special Indemnity Fund v.*

The aftermath of today's decision that creates perpetually unextinguishable *qui tam* claims doubtless will (1) expose countless former officials to suits upon long-forgotten claims, (2) have a chilling effect on those who would aspire to municipal office, (3) require *enormous* expenditures for storage facilities to house and *preserve forever* public officials' record proof that their public duty was flawlessly performed and (4) make bonds required of public officials and of municipal contractors *more expensive and difficult to secure.*[43]

State, the counties, or the municipalities constitutionally *immune* from time bars that limit the time within which claims may be prosecuted by personal actions. The early American *frontier-era version* of *nullum tempus,* which encompasses municipalities and other inferior bodies politic lacking sovereign status, has *outlived its usefulness for nurturing nascent cradles of hinterland civilization. I would hence hold that time does run against qui tam plaintiffs suing to benefit inferior bodies politic unless the applicable statute of limitations explicitly excludes them from its operation.*

## SUMMARY

Remedial time bars are an *integral part of our legal system's regime for extinguishing stale claims.* These bars should govern all *qui tam plaintiffs except those who press for vindication the State's sovereign rights.* The interdictions contained in Art. 5, § 53 are not intended to make the

Barnes, Okl., 434 P.2d 218, 221 (1967); *Adams v. Coon,* 36 Okl. 644, 129 P. 851, 853 (1913), overruled on other grounds by *In re 1973 John Deere 4030 Tractor,* Okl., 816 P.2d. 1126, 1132 (1991). See also *Burns v. Board of Sup'rs. of Stafford County,* 227 Va. 354, 315 S.E.2d 856, 859 (1984).

*By today's opinion public officials are left exposed to the risk that a qui tam plaintiff will defer bringing an action until most, if not all,*

*defendants' witnesses have died or moved away and until all exculpatory evidence has been either lost or destroyed.*

**43.** *The heavy burden of a more costly government that will inevitably follow today's pronouncement will doubtless fall upon the very same taxpayers who are the intended beneficiaries of the court's largesse to qui tam plaintiffs.*